IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.      ) | 02: 05cr385-01 |
| ) | |
| JELANI SOLOMON ) | |

**MEMORANDUM ORDER**

Defendant Jelani Solomon has filed a series of pre-trial motions, to which the government has filed an Omnibus Response. The issues have been fully briefed and are ripe for decision. The Court will address and rule on the motions seriatim.

**Motion for Disclosure of Brady Materials[1]**
**(Document No. 120)**

Defendants request that the government provide him any exculpatory, impeachment, or otherwise favorable evidence. The government responds that "all known exculpatory evidence, . . . , has been provided. To the extent that additional material becomes known to the government, it will be provided to the Defendant." The Court notes that the government has acknowledged its duties under the Jencks Act, *Brady, Giglio*, and Rule 16 of the Federal Rules of Criminal Procedure. The Court has ordered that the government shall disclose all Brady exculpatory and Rule 16(a)(1) material forthwith.

Defendants also request production of specific groups of information. Those requests will be address seriatim.

---

[1]    Co-Defendant Hanner has joined in the Motion for Disclosure of Brady Materials.

      a.      Defendants request the military history of government witnesses and confidential informants. The government objects on the basis that this information is not discoverable as it constitutes neither favorable nor impeachment evidence. It does not appear to the Court that the requested information falls within one of the categories of information subject to disclosure under Rule 16. Therefore, this request is **DENIED**.

      b.      In subparagraphs (b) - (j), Defendants seek various information about the government's witnesses and/or informants, the substance of which is a request for impeachment-type *Brady* material covered by the rule of *Giglio v. United States*, 405 U.S. 150 (1972). The government responds that, to the extent any such information exists pertaining to its witnesses, such information will be provided, prior to trial with Jencks / impeachment material. As reflected in Pre-trial Scheduling Order No. 1, the government has agreed to provide Defendants with all Jencks/ impeachment material, along with its witness list, on or before August 31, 2007.

      The Court notes that it has not ordered the government to reveal the identities of its witnesses and/or informants, and to compel disclosure of this requested information would, in all likelihood, reveal the identities of said witnesses and informants. Therefore, the request for an order which compels the disclosure of said information at this time is **DENIED.**

      However, the Court is cognizant of the fact that such information, to the extent that it exists, is clearly discoverable and should be voluntarily disclosed to the Defendants "in sufficient time for its effective use at trial." *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir.), *cert. denied*, 464 U.S. 1048 (1984).

    c. Last, Defendants request information pertaining to any recorded conversations that do not contain any incriminating information or contain denials of illegal conduct by Jelani Solomon. The government responds that to the extent that such conversations involved Jelani Solomon, they have been provided. "To the extent that such conversations involved others, they are not discoverable, since the fact that an individual indicates no knowledge of criminal activity by a defendant does not constitute exculpatory evidence."

  While the broad generalization that the fact that an individual indicates no knowledge of criminal activity by a defendant is not within the scope of *Brady* may be true, the Court can certainly envision situations in which such material would be exculpatory. However, because the identification of *Brady* material is preliminarily a matter for the prosecutor's judgment and because the government has represented that it has disclosed all exculpatory material, this request is **DENIED WITHOUT PREJUDICE.** *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (finding that "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence to the others acting on the government's behalf in the case . . . .").

**Motion for Additional Discovery[2]**
**(Document No. 122)**

Defendants' motion for additional discovery requests that the Court order the government to disclose a broad range of information.  Again, the government has acknowledged its duties under the Jencks Act, *Brady, Giglio*, and Rules 12 and 16 of the Federal Rules of Criminal Procedure.  The Court will address the requests seriatim, with each ruling corresponding to the letter the Defendant has assigned to his request.

      a.      Defendants request that the government disclose "any and all information, of whatever form, exchanged between and/or among any representative, employee and/or agent of the United States of America and any representative, employee and/or agent of any police departments and/or agencies located in the Commonwealth of Pennsylvania relating to Mr. Solomon."  The government objects to this request as overbroad.

The government's obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure.  Under *Brady,* and its progeny, though, the government is also obligated to disclose exculpatory evidence.  However, strictly speaking, *Brady* is "not a discovery rule,  but a rule of fairness and minimum prosecutorial obligation." *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984).  Lastly, the Jencks Act, 18 U.S.C. § 3500, requires the government to provide the defense with statements of witnesses that the government intends to call at trial.  Outside of the aforementioned statutes, rules, and case law, a defendant has no general constitutional right to pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Those rights conferred by

---

    [2]      Co-Defendant Hanner has joined in the Motion for Additional Discovery.

statute, rule, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. *United States v. Fiorvanti*, 412 F.2d 407, 411 (3d Cir.), *cert. denied*, 396 U.S. 837 (1969).

In this request, it appears to the Court that Defendants seek pretrial disclosure of information that goes well beyond the types of discovery permitted in federal criminal cases. As stated *supra,* the government has acknowledged its responsibilities under the Jencks Act, *Brady, Giglio*, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. Accordingly, the request is **DENIED.**

b.   Defendants request that the government disclose "any and all information, of whatever form, exchanged between and/or among any representative, employee and/or agent of the United States of America , the Drug Enforcement Agency and/or any state law enforcement agent of any police departments and/or agencies located in the Commonwealth of Pennsylvania relating to Mr. Solomon." The government also objects to this request on the grounds that it is overbroad. For the same reasons as discussed in (a) above, the request is **DENIED.**

c - d.   Defendants request that the government provide "any and all videotapes and/or composites of videotapes" and "all recorded oral conversations or attempted recordings of oral conversations" which relate to the case. The government responds that all video and audio tapes have been turned over, with the exception of one videotape which the government has been unable to copy because of its format. With respect to that single videotape, counsel for Defendants have been informed that this tape is available for inspection and arrangements have been made for counsel to review the tape. It appears to the Court that the government has

adequately responded to this discovery request. Accordingly, the request to compel disclosure of any and all videotapes, composites of videotapes, or audiotapes is **DENIED AS MOOT.**

   e. Defendants broadly request "any and all records and/or documents of any kind and nature . . . whatsoever relating to Jelanie Solomon." It appears to the Court that Defendants seek pretrial disclosure of information that goes well beyond the types of discovery permitted in federal criminal cases. As stated *supra,* the government has acknowledged its responsibilities under the Jencks Act, *Brady, Giglio*, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. Accordingly, the request is **DENIED.**

   f. Defendants request copies of all "affidavits and/or other materials which were submitted to any United States Magistrate Judge and/or any United States District Judge or state court judge or magisterial district judge by agents of any law enforcement agency which relate, in any manner, to the within case to which any issuing authority did not issue search warrants and/or orders authorizing wiretaps." The government responds that it is not aware of any such material. It appears to the Court that the government has adequately responded to this discovery request. Accordingly, the request is **DENIED.**

   g. Defendants request "expert and/or scientific reports." The government responds that all such reports have been turned over. Accordingly, the request to compel disclosure of expert and/or scientific reports is **DENIED AS MOOT**. Furthermore, the Court notes that the government has represented that all curriculum vitaes and summaries prepared by its expert(s) will be provided to Defendants as soon as possible. *See* Text Order of February 8, 2007, denying without prejudice Defendant Hanner's Motion for Discovery Request Pursuant to Rule 16(a)(1) Regarding Expert Witnesses.

h.      Defendants request "all logs and/or pen registers relating to any type of surveillance prepared by all law enforcement officers who participated in the investigation of this case." The government responds that surveillance logs of the Pennsylvania Attorney General's investigation have been turned over, as have the results of their pen registers on Jelani Solomon. As to the remainder of Defendant's request, the government objects on the grounds that the request is overbroad as the request can be interpreted as asking the government to disclose any report, logs or pen registers ever prepared by any law enforcement officer involved in this case, even if such items have no relation whatsoever to this particular prosecution. The Court agrees with the government. It appears to the Court that the government has adequately responded to this discovery request. Accordingly, the request is **DENIED.**

i.       Defendants request "all evidence logs or any and all materials and/or records memorializing the chain of custody of all evidence in this case." The government responds that all evidence and logs are available for inspection, that the New Brighton Police Department evidence log has already been provided to Defendants' counsel, and that a meeting will be arranged with Defendants' counsel at the offices of the Drug Enforcement Administration ("DEA") once all of the evidence is collected from the various police departments and brought to the DEA. It appears that the government has either adequately responded to this discovery request or is in the process of responding to this request. Accordingly, this discovery request is **DENIED WITHOUT PREJUDICE** in view of the government's representation that a meeting will be arranged at the offices of the DEA for counsel for defendants to review this information.

   j. Defendants request "all lab reports relating to any evidence in this case," to which the government has responded that same have been provided. Further, the government represents that to the extent additional laboratory reports become available, same will be also be provided. Accordingly, the discovery request is **DENIED AS MOOT**.

   k. Lastly, Defendants request "all materials and/or evidence found as a result of any search and/or seizure (sic) person, home and/or automobile and/or any residence or automobile which may have been under the control of Mr. Solomon." Again, the government responds that such material has already been provided, and that "to the extent additional materials become available, they will be provided." Accordingly, the discovery request is **DENIED AS MOOT.**

### Motion to Exclude Irrelevant and/or Prejudicial Evidence[3]
### (Document No. 126)

Defendants contend that "[a] large amount of recorded conversations have been made available by the government during discovery which may contain expletives and or references to other inflammatory speech or conduct." Defendants argue that the expletives or inflammatory speech or conduct do not add any substance to the matters presented and "inasmuch as such materials can cause unnecessary prejudice," request that such material should be deleted from the recorded conversations. As the government points out, however, Defendants fail to specify the conversations to which they make reference and the specific passages which should be excluded.

---

[3]  Co-Defendant Hanner has joined in the Motion to Exclude Prejudicial Evidence.

Without knowing the specific "expletives and or references to other inflammatory speech or conduct" to which Defendant is objecting, the Court cannot rule on the motion at this time and, accordingly, the motion is **DENIED WITHOUT PREJUDICE.** However, Defendants are reminded that courts within our circuit have admitted recorded statements containing racial and ethnic slurs and/or offensive language, even when the slurs have no probative value whatsoever. *See United States v. Price*, 13 F.3d 711, 720-21 (3d Cir. 1994) (admitting taped conversations with racial slurs and refusing to redact them because it would be impossible to do so without altering the substance of the statements); *United States v. Whitaker,* 372 F. Supp. 154, 163-64 (M.D. Pa. ), *aff'd,* 503 F.2d 1400 (3d Cir. 1974) (playing of tape recorded conversations with offensive language could not reasonably have been avoided, since exclusion of obscenities would have rendered recordings as incomprehensible; any prejudice was minimized by voir dire inquiry).

**Motion to Require Retention of Rough Notes and to
Preserve Other Evidence
(Document No. 129)**

Defendant requests "the Court to issue an order requiring that all law enforcement officers in this case retain rough notes and any other evidence relating to interviews of alleged co-conspirators, confidential information and/or cooperating witnesses." The government responds that it is aware of its duties in this regard and "has made a request, in writing, to all federal and state agents involved in this case, advising them of the Defendant's Motion and requesting that they retain copies of any notes they have taken."

Independent of the government's consent, the Court notes that the Court of Appeals for the Third Circuit requires that the government retain rough notes and writings. *United States v. Ammar,* 714 F.2d 238, 258-59 (3d Cir.), *cert. denied,* 464 U.S. 939 (1983). Therefore, the Defendant's request that all law enforcement officers retain their rough notes is **GRANTED** and all law enforcement officers in this case are hereby **ORDERED** to retain their rough notes and any other evidence relating to interviews of alleged co-conspirators, confidential informants, and/or cooperating witnesses.

**Motion for Disclosure of Confidential Informants Or, In the Alternative,
Motion to Preclude Hearsay Evidence of Confidential Informants
from Pre-Trial Hearings and/or Trial[4]
(Document No. 133)**

Defendants request the Court to require the government to reveal the identity of the "original confidential informant" in this case and any other confidential informants utilized during the pretrial investigation of the case. Alternatively, Defendants ask the Court to preclude references to information obtained from the confidential informant at any pre-trial hearings or the trial of the case.

Defendants contend that this information should be discoverable because "[b]ased upon a review of the discovery materials provided so far, it is apparent that the information provided by the original confidential informant was incorrect and inaccurate."

---

[4] Co-Defendant Hanner has joined in the Motion for Disclosure of Confidential Informants Or, In the Alternative, Motion to Preclude Hearsay Evidence of Confidential Informants from Pre-Trial Hearings and/or Trial.

The government has a qualified privilege to refuse to disclose the identity of confidential informants who have provided information about alleged criminal acts. *Roviaro v. United States*, 353 U.S. 53 (1957); *Pickel v. United States*, 746 F.2d 176, 181 (3d Cir. 1984).

In determining whether the privilege should be respected, a court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. *See Roviaro,* 353 U.S. at 59-61*; Pickel,* 746 F.2d at 181. The United States Court of Appeals for the Third Circuit has observed that *Roviaro* "left substantial leeway to the trial courts to determine on a case-by-case basis whether disclosure is warranted." *United States v. Brown*, 3 F.3d 673, 679 (3d Cir.), *cert. denied*, 510 U.S. 1017 (1993). The Supreme Court further emphasized that protecting an informant's identity serves an important public interest in that it encourages citizens to supply the government with information concerning criminal activity. *Id.* at 679.

An individual seeking disclosure has the burden of establishing the significance of the informant's testimony. *United States v. Jiles*, 658 F.2d 194, 196-97 (3d Cir. 1981), *cert. denied*, 455 U.S. 923 (1982).

In *Jiles*, the United States Court of Appeals for the Third Circuit identified three typical scenarios for applying the *Roviaro* test. The first scenario, such as in *Roviaro*, is where the confidential informant played an active and crucial role in the events underlying the defendant's criminal liability. Disclosure of the informant is often required in these cases to ensure a fair trial. *Jiles,* 658 F.2d at 196-97.

The second scenario is where the confidential informant was not an active participant or eyewitness but was only a "mere tipster." Disclosure is generally not required in these cases. *Id.*

In the third scenario, such as in *Jiles,* where the informant was an eyewitness but did not participate in the criminal activity, the balancing becomes more difficult to apply. *Id.* The Supreme Court found that even where the informant could provide exculpatory information as an eyewitness, the identity of the informant could remain undisclosed due to the risk of harm to the informant. *Jiles,* 658 U.S. at 197.

Defendants argue that they should be "given a full opportunity to investigate the background of the confidential informant, attempt to interview the confidential informant and effectively cross examine any witness who attempts to recite the incorrect and inaccurate information purportedly provided by the confidential informant."

The government correctly points out that the identity of Shawn Helisek has been known to the Defendant for years. Additionally, the government represents that it "does not anticipate any trial testimony will involve information about confidential informants who will not testify at trial . . . ."

Unlike the case at bar, the informant in *Rovario* was not going to be called by the government to testify nor was the government going to provide any impeachment information to defendant. Thus, the defendant in *Rovario* was precluded from examining the informant in any form and the only other witness to the transaction was a government agent. Such is not the circumstance in the case at bar.

Here, the government has indicated that it will disclose the identity of any informant who will testify at trial at least three days in advance of trial, beyond the requirements of the statute. *See* 18 U.S.C. § 3432. Thus, unlike in *Rovario,* Defendant will have an opportunity to examine the informants in open court and impeach said witnesses.

Therefore, the request to compel disclosure of the government's informants is **DENIED**.

So **ORDERED** this 20th day of February, 2007.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     Tina O. Miller , Esquire
        Assistant U.S. Attorney
        Email: tina.o.miller@usdoj.gov

        Leo M. Dillon,
        Assistant U.S. Attorney
        Email: Leo.Dillon@usdoj.gov

        Martin A. Dietz, Esquire
        Email: MDietzEsq@aol.com

        Robert E. Stewart , Esquire
        Email: restjs@msn.com

        Caroline M. Roberto, Esquire
        Email: croberto@choiceonemail.com

        Jay T. McCamic , Esquire
        McCamic, Sacco, Pizzuti & McCoid, PLLC
        Email: jtmccamic@mspmlaw.com