**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,           )
                                    )
                    v.              )           02: 05cr385
                                    )
JELANI SOLOMON                      )
CLARON HANNER                       )

**MEMORANDUM OPINION AND ORDER**

Defendants have filed the following suppression motions, to which the government

has responded:[1]

•       MOTION TO SUPPRESS INTERCEPTED JAIL CALLS filed by Defendant

Jelani Solomon (Document No. 233), and joined by Defendant Claron Hanner (Document No.

293);

•       MOTION TO SUPPRESS CELLULAR PHONE EVIDENCE filed by

Defendant Jelani Solomon (Document No. 248);

•       MOTION TO SUPPRESS BLOOD SAMPLE filed by Defendant Claron

Hanner (Document No. 267);

•       MOTION TO SUPPRESS ITEMS SEIZED FROM ROOM 117 AT THE

AIRPORT PLAZA HOTEL filed by Defendant Claron Hanner (Document No. 270);

•       MOTION TO SUPPRESS AUTOMOBILE AND REAL PROPERTY filed

by Defendant Jelani Solomon (Document No. 279); and

•       MOTION TO SUPPRESS MONEY AND JEWELRY filed by Defendant

Jelani Solomon (Document No. 281).

---

[1]       The government filed an Omnibus Response at Document No. 324.

The Court will rule without a hearing on each of these motions. First, the Court finds and rules that Defendants have not met their burden of establishing that a hearing is necessary, as Defendants have not stated a colorable claim for relief. *See United States v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994). Second, the Court finds and rules that the decision of the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978), does not require a hearing on these motions.

The United States Court of Appeals for the Third Circuit has summarized the law governing the necessity *vel non* of an evidentiary hearing on a defendants' pretrial motion in a criminal case as follows:

> Rule 12(b)(1) of the Federal Rules of Criminal Procedure requires that all "defects in the institution of the prosecution" be raised by pretrial motion. Fed. R. Crim. P. 12(b)(1). Although Rule 12 does not by its terms specify when such a motion entitles a defendant to a pretrial evidentiary hearing, <u>we have held that a defendant's moving papers must demonstrate a "colorable claim" for relief.</u> *United States v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994). *See United States v. Soberon*, 929 F.2d 935, 941 (3d Cir.), *cert. denied*, 502 U.S. 818 (1991). In order to be "colorable," a defendant's motion must consist of more than mere bald-faced allegations of misconduct. *United States v. Sophie,* 900 F.2d 1064, 1071 (7th Cir.), *cert. denied*, 498 U.S. 843 (1990). There must be an issue of fact material to the resolution of the defendant's constitutional claim. *See United States v. Panitz*, 907 F.2d 1267, 1273-74 (1st Cir. 1990); *Sophie,* 900 F.2d at 1071.

*United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (emphasis added); *accord United States v. D'Andrea*, 495 F.2d 1170, 1174 (3d Cir. 1974) ("[S]ince petitioners ha[ve] not presented any evidence demonstrating that these representations by the Government (were) false, a hearing [i]s not warranted.").

Accordingly, the Court will exercise its discretion and not hold an evidentiary hearing before ruling on the instant motions to suppress.  The motions will be addressed seriatim.

### Motion to Suppress Intercepted Jail Calls

Since their arrests in this capital case, Defendants have been housed in a number of different penal institutions.  Defendant Solomon has been housed in the Allegheny County Jail, the Washington County Correctional Facility, the State Correctional Institution ("SCI") Mercer, SCI Greene, and SCI Mahanoy.  Defendant Hanner has been housed in the Beaver County Jail, the Allegheny County Jail, and the Northern Regional Jail in Moundsville, West Virginia.  The intercepted calls at issue include calls from SCI Mahanoy and Mercer for Defendant Solomon and the Allegheny County Jail for Defendant Hanner.

Defendants contend that their jail calls were intercepted in violation of their constitutional rights because "(i) the calls were searched and /or seized without a search warrant or valid authorization to intercept the calls; (ii) the calls were searched and/or seized before a search warrant was issued for it; (iii) the calls were seized without sufficient probable cause or exigency; and (iv) [Defendants] did not consent to the search or seizure of the calls."

Defendants clearly recognize that any privacy interests they have in telephone calls placed from a jail facility are tenuous.  *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (recognizing the diminished rights of those in and visiting prisons).  However, Defendants contend that there is no evidence that each facility in which they were housed had a formal, published policy that Defendants' outgoing telephone calls would be recorded.  Based on the

evidence produced by the government in response to these motions, the Court finds that Defendants' arguments are without merit.

<u>SCI Mahanoy and SCI Mercer</u>

_____The government has produced a recording of one of Defendant Solomon's outgoing telephone calls made from SCI Mahanoy.  On the recording, prior to the parties beginning their conversation, a message is clearly heard which advises that the call is subject to monitoring and recording [2]  The call is periodically interrupted with a recording that says "This call is from a correctional institution and is subject to monitoring and recording."  It is evident from the phone recording that inmates at SCI Mahanoy are provided with considerable notice that their outgoing calls may be monitored and recorded.

As to SCI Mercer, the government has produced records which reveal that Defendant Solomon received a Department of Corrections Inmate Handbook and State Regional Correctional Facility Mercer (SRCFM) Supplement, in which he acknowledged receipt of the DC-8A, Inmate Telephone Authorization Form.  In fact, it appears that each time Defendant Solomon added or deleted individuals to his telephone authorization form, he would sign an acknowledgment, which was typed in bold and read as follows:  **"Any telephone call that you make or receive in any state correctional facility, may be intercepted, recorded,**

---

[2]     "You have a call from [Jelani], an inmate at the State Correctional Institution at [Mahanoy,] you will not be charged for this call.  This call is from a correctional institution and is subject to monitoring and recording.  Custom calling features are not allowed during this conversation.  If you do not wish to accept this call, please hang up now.  To accept the call press zero.  Go ahead with your call."  *See Exhibit 2.*

**monitored, or divulged.  The only exception is properly placed telephone calls to or from your attorney."**

The Court finds and rules that the record reflects that Defendant Solomon clearly received notice of the State Department of Corrections policy of monitoring and recording telephone calls and, thus, had no reasonable expectation of privacy in his non-attorney telephone calls made from SCI Mahanoy and/or SCI Mercer.  Therefore, there was no violation of the Fourth Amendment, and Defendant Solomon's motion to suppress intercepted jail calls is **DENIED**.


<u>Allegheny County Jail</u>

This Court has previously issued findings regarding the telephone calling procedures established by the Allegheny County Jail.  For example, the Court found that all inmate outgoing calls are recorded unless an inmate affirmatively demonstrates that the subject matter of the call will be confidential, *e.g.*, a conversation with an attorney.  Inmates are provided with considerable notice that their outgoing calls will be recorded.  Signs are conspicuously posted at each telephone which state that all telephone calls are recorded.  Additionally, a recorded message advising that the call will be recorded is heard prior to each outgoing call. An inmate must hear the message in order to use the telephone.

As this Court found in its decision in *United States v. Plummer*, 2006 WL 2226010 (Aug. 2, 2006, W.D. Pa. 2006), Defendant Hanner had no reasonable expectation of privacy in his non-attorney telephone calls made from the Allegheny County Jail.  Therefore, there was no

violation of the Fourth Amendment, and Defendant Hanner's Motion to Suppress intercepted jail calls is likewise **DENIED**.

### MOTION TO SUPPRESS CELLULAR PHONE EVIDENCE

Defendant Solomon requests the Court to suppress records seized pursuant to a search warrant for subscriber information and detailed call records for Cricket Communications Phone Number 724-417-3740. The Court will summarily deny this request as Defendant has alleged no set of facts which establish that he had a possessory interest or a legitimate expectation of privacy in this particular cellular telephone number. The subject cellular telephone number was not registered in Defendant Solomon's name, nor was he listed as an authorized user of the telephone. Rather, the subscriber of the phone is listed as Anthony Carter.

Even assuming *arguendo* that Defendant had a legitimate expectation of privacy in this particular cellular telephone number, case law is clear that Defendant has no legitimate expectation of privacy for phone records maintained by a third party. *See Smith v. Maryland*, 442 U.S. 735 (1979); *United States v. Grabow*, 621 F. Supp. 787 (D.C. Colo. 1985) (the records were those of the phone company and the defendant as a subscriber has no Fourth Amendment expectation of privacy in such records.).[3]

Alternatively, even if a legitimate expectation of privacy in third party telephone records existed, the Court finds and rules that the warrant in this case was supported by

---

[3]      The government represents that the actual phone was never seized or searched.

probable cause.  The search warrant affidavit details (i) Defendant Hanner's alleged

involvement in the homicide of Frank Helisek, Jr.; (ii) the recovery of a cell phone at the scene

of the homicide which was believed to have been used by Defendant Hanner; (iii) a connection

between the cell phone found at the scene of the homicide and a cellular phone registered to

Khaliah Solomon; (iv) that shortly after the homicide of Frank Helisek, Jr., a call was made

from Khaliah Solomon's cellular telephone to the Cricket Cellular Phone Number 724-417-

3730.   For these reasons, the Court finds and rules that the information contained in the search

warrant affidavit was more than sufficient to establish probable cause for the issuance of a

search warrant for the phone records regarding Cricket Cellular Phone Number 724-417-3730.

Therefore, Defendant's motion is **DENIED.**


### MOTION TO SUPPRESS BLOOD SAMPLE

Defendant Hanner seeks to suppress the blood sample that was taken from him

pursuant to a search warrant for DNA comparison.  Defendant argues that there are no facts in

the search warrant affidavit which establish probable cause that his genetic material would be

linked to evidence from the crime; that the information in the search warrant affidavit

concerning voice mails was "stale;" and that the search warrant affidavit is misleading because

it provides a false inference that Paul Cimino identified Defendant Hanner as "P" and

"Pittsburgh."  In the alternative, Defendant Hanner requests a Franks v. Delaware hearing to

determine if the Fourth Amendment has been violated.

To obtain a Franks hearing, a defendant must make a "substantial preliminary

showing" of intentional or reckless falsity on the part of the affiant and that these statements

were necessary to the probable cause finding.  *United States v. Brown,* 3 F.3d 673, 676-77 (3d Cir. 1993). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks,* 438 U.S. 154, 170-71 (1978).

The first step in the <u>Franks</u> analysis is to identify false information contained in the affidavit, as well as consideration of material omissions or distortions.  *Wilson v. Russo*, 212 F.3d 781, 787-88 (3d Cir. 2000).  If the affidavit is found to contain material falsehoods, the second step of the analysis is to excise the false statements from the affidavit and step into the shoes of the magistrate judge, to make a determination as to whether probable cause exists to support the issuance of a warrant based on the information that remains in the affidavit.

Defendant Hanner contends that there are no facts in the search warrant affidavit which establish probable cause that his genetic material would be linked to evidence from the crime.  However, a review of the search warrant affidavit reveals the following details:  (i) Defendant Hanner's alleged involvement in the homicide of Frank Helisek, Jr.; (ii) Defendant Hanner having stopped by Paul Cimino's house in the early morning hours following the homicide of Frank Helisek, Jr., and gave Paul Cimino a black handgun for safe keeping, which was later identified as a 9 mm Glock bearing serial number EDY655US; (iii) that the same handgun was taken to the Pennsylvania State Police Crime lab and wiped for the possible presence of DNA; and (iv) that the lab technician had requested a DNA sample from the suspect, Defendant Hanner, to "compare to a swipe taken from the handgun."

The Court finds and rules that the search warrant affidavit clearly establishes probable cause to believe that Defendant Hanner handled the 9mm Glock handgun from which

a DNA "swipe" had been obtained. The Court, therefore, finds that there are sufficient facts in the search warrant to establish probable cause that Defendant Hanner's genetic material would be linked to evidence from the crime.

Next, Defendant Hanner contends that the search warrant affidavit contains "critical facts" which are either stale or misleading.  For example, Paragraph 3 of the search warrant affidavit states as follows:

> Pursuant to the search warrant served on the seized cellular telephone and through use of the telephone's voice mail system, it was learned that outside callers referred to the possessor of that telephone as "Pittsburgh."

Defendant contends that the affidavit fails to provide a time frame regarding when the voice mail messages were recorded and, therefore, is stale.  Defendant also contends that the affidavit contains misleading statement(s) in that it "provides the false inference" that Paul Cimino identified Defendant Hanner as  "P" or "Pittsburgh."

Contrary to Defendant's contentions, the Court finds and rules that the "critical facts" of the warrant have virtually nothing to do with voice mail references to "P," or "Pittsburgh." Rather, the critical facts are, *inter alia,* that Paul Cimino told police that Defendant Hanner came by his house on January 20, 2004, and handed him a Glock, 9mm caliber pistol to hold. The handgun was submitted to the state police DNA lab, where it was "swiped"  by a serologist, DNA was found and the lab requested a comparison sample from the suspect, Defendant Hanner.

The Court finds and rules that the voice mail references to "P" and "Pittsburg" are simply surplusage which are of little consequence.  However, even if all voice mail references to the identification of Defendant Hanner as  "P" or "Pittsburgh" are excised from the affidavit,

the Court finds and rules that probable cause still exists because it is the identification by Paul Cimino of Defendant Hanner and Defendant Hanner's alleged connection to the Glock handgun which he gave to Paul Cimino is the vital information to the determination of probable cause.

Therefore, based on the totality of the circumstances, the Court finds that the search warrant affidavit provided a substantial basis for the magistrate judge to conclude that Defendant Hanner had handled the handgun and that probable cause existed to believe that Defendant Hanner's genetic material would be linked to the hand gun evidence from the crime.

Accordingly, the Motion to Suppress is **DENIED.**  As the Court has indicated, it has found that probable cause existed for the issuance of the search warrant at issue.  The Court is willing, however, to hear legal argument on the issue of probable cause if counsel desires and counsel should so advise the court forthwith and argument will be scheduled on **April 2 or 3, 2007**.

### Motion to Suppress Items Seized from Room 117 at the Airport Plaza Hotel[4]

As part of the investigation of the homicide of Frank Helisek, Jr., a search warrant was executed on January 20, 2004, at approximately 11:15 p.m. at Room 117 of the Airport Plaza Hotel, located at 9404 University Boulevard in Moon Township, Allegheny County, Pennsylvania.  Defendant Hanner requests that any and all items seized as a result of this search be suppressed because "there is no information in the affidavit which provides the inference that contraband or other evidence will be found in the motel room."

---

[4]     Defendant Hanner filed a Reply (Document No. 384) to the government's response; to which the government filed a Sur-Reply at Document No. 392..

The government responds that Defendant Hanner has set forth no allegations that he actually had a possessory interest in the hotel room or a legitimate expectation of privacy. Alternatively, the government responds that even if Defendant Hanner could establish some expectation of privacy, the room was abandoned because by the time the room was searched, Defendant Hanner and Khaliah Solomon were at the Greyhound Bus Station in Pittsburgh, Pennsylvania, with tickets to New York City.

The Court will deny the motion based on the information contained within the four corners of the affidavit.   The search warrant affidavit provides significant detail of Defendant Hanner's alleged role in the homicide of Frank Helisek, Jr., and states that "the evidence to be searched for is located in a hotel room rented by the possible suspects."  Affidavit of Probable Cause (emphasis added).  A sufficient nexus between the hotel room and Defendant Hanner was clearly stated.

Further, the items in the warrant sought to be searched for and seized were very specific and were supported by the allegations in the Affidavit of Probable Cause.  For example, "a cell phone charger that would fit a Cricket cell phone" - the affidavit states that a Cricket cellular phone was found near the crime scene; "9mm ammunition and any magazines to fit a 9 mm Glock" - the affidavit states that this particular caliber handgun is believed to have caused the death of Frank Helisek, Jr., and that Defendant Hanner allegedly gave Paul Cimino a 9 mm Glock handgun and asked him "to conceal the weapon inside the commonwealth witness' home;" "any clothing belonging to the suspect" - the affidavit reflects that Defendant Hanner had been shopping for new clothes and that Defendant Hanner's discarded clothes, along with

"several new purchase garment tags associated with new clothing" were found at Paul Cimino's residence.

Therefore, based on the totality of the circumstances and the information in the affidavit, the Court finds that the search warrant affidavit provided a substantial basis for the magistrate judge to conclude that contraband or other evidence of a crime would likely be found in Room 117 of the Airport Plaza Hotel. Accordingly, Hanner's Motion to Suppress is **DENIED.**

### MOTION TO SUPPRESS AUTOMOBILE AND REAL PROPERTY

Defendant Solomon asks the Court to suppress evidence seized from real property and an automobile "that the government attributes to Mr. Solomon."  Defendant argues that such items were searched and/or seized without a search warrant; without sufficient probable cause or exigency; and without Defendant's consent.

The Court notes that all of the properties and the automobile at issue were seized pursuant to valid seizure warrants, which were signed by this Court. *See* United States v. Various Parcels of Real Property, 05-cv-1498; United States v. Various Vehicles Titled in the Name of Jelani Solomon, 06-cv-0024,

The government represents that none of the seized houses were searched by any law enforcement personnel involved in this case and, therefore, there is no evidence that will be introduced at trial from any of the houses.  Based on this representation of the government, the motion to suppress evidence seized from real property is **DENIED AS MOOT.**

Similarly, the government represents that an inventory search of the automobile was conducted when it was seized; however, said inventory search yielded nothing more than vehicle registration type papers.  The government did take photographs of the automobile, which have been provided to defense counsel.  Accordingly, Solomon's Motion to Suppress evidence seized from the automobile is **DENIED.**

### MOTION TO SUPPRESS MONEY AND JEWELRY

Defendant Solomon asks the court to suppress money and jewelry which government agents seized from a safe deposit box at New Alliance Federal Credit Union pursuant to a search warrant.  Defendant contends that the evidence was seized in violation of Defendant's constitutional rights because the affidavit in support of the search warrant did not establish probable cause, the evidence was seized without sufficient probable cause, and the Defendant did not consent to the search.

The government confirms that jewelry was discovered and seized from the safe deposit box, but represents that no money was found within the safe deposit box.  Rather, the money was voluntarily turned over to federal investigators by Ayanna Anderson, in the presence of her attorney, after she disclosed that she had possession of the money.

Initially, the Court notes that the safe deposit box was not registered in Defendant's name, but rather was in the name of Ayanna Anderson.  Defendant has alleged no facts in his motion which would establish that he had a legitimate expectation of privacy in this safe deposit box.  However, assuming *arguendo* that Defendant could establish a legitimate expectation of privacy in the safe deposit box, the Court finds and rules that there was clearly

probable cause for the issuance of a search warrant to search for proceeds from Defendant's alleged unlawful narcotics trafficking.

For example, the Affidavit reflects, *inter alia,* that Ayanna Anderson and Jelani Solomon were engaged in a relationship, which dated back to at least 2000, the year the safe deposit box was opened.  (Affidavit ¶ 25.)   While Defendant was incarcerated at SCI Mercer, he and Ayanna Anderson had frequent telephone conversations, sometimes as often as 3-4 times per week.  (*Id*. at 28.)

The Affidavit also reflects that after Defendant was incarcerated, in January 2004, Ayanna Anderson began making monthly payments of $1,191.29 on a 2001 Mercedes Benz convertible, which had been purchased by Defendant approximately twelve (12) days prior to his incarceration.  According to the Affidavit, Ayanna Anderson would enter the safe deposit box, and either the same day or within a few days thereafter, she would make a cash deposit into her checking account at New Alliance Federal Credit Union.  She would then direct Western Union to electronically wire the money from her checking account for the payment(s).

Based on conversations and interviews with cooperating witnesses, it was the opinion of the affiant that Ayanna Anderson had access to money stored by Defendant prior to his incarceration.  Further, the affiant stated that Ayanna Anderson collected rent for properties which Defendant owned.  The Court finds and rules that there was probable cause for the issuance of the search warrant to search for proceeds from Defendant Solomon's alleged unlawful narcotics trafficking business.  Accordingly, the Motion to Suppress is **DENIED.**

So **ORDERED** this 26th day of March, 2007.


BY THE COURT:


s/Terrence F. McVerry
United States District Court Judge


cc:        Tina O. Miller , Esquire
Assistant U.S. Attorney
Email: tina.o.miller@usdoj.gov

Leo M. Dillon,
Assistant U.S. Attorney
Email: Leo.Dillon@usdoj.gov

Martin A. Dietz, Esquire
Email: MDietzEsq@aol.com

Robert E. Stewart , Esquire
Email: restjs@msn.com

Caroline M. Roberto, Esquire
Email: croberto@choiceonemail.com


Jay T. McCamic , Esquire
McCamic, Sacco, Pizzuti & McCoid, PLLC
Email: jtmccamic@mspmlaw.com