IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.               ) | 02: 05cr385 |
| ) | |
| JELANI SOLOMON   ) | |
| CLARON HANNER   ) | |

**MEMORANDUM ORDER**

Presently before the Court for disposition are a number of pre-trial motions in which the Defendants seek production of a wide array of information. The government has timely responded to each motion and, thus, same are ripe for disposition. The motions will be addressed seriatim.

**MOTION TO HOLD AN AUDIBILITY HEARING TO DETERMINE THE
ADMISSIBILITY OF ANY TAPE RECORDED EVIDENCE AT TRIAL**
filed by Defendant Jelani Solomon (Document Nos. 237),
and joined by Defendant Hanner (Document No. 293)

and

**MOTION TO DESIGNATE VIDEOTAPES AND AUDIO FILES**
filed by Defendant Jelani Solomon (Document No. 241),
and joined by Defendant Hanner has joined (Document No. 293)[1]

Defendants have been provided with numerous audiotapes, videotapes, and digital recordings of conversations allegedly involving Defendant Solomon and/or Defendant Hanner, which the government will introduce at trial for use against the Defendants. According to the Defendants, "the quality of the alleged recordings is very poor and a large portion of the tapes

---

[1] The Government filed a joint response to these motions at Document No. 332.

is unintelligible and difficult to understand." *Mot. at ¶ 9 (Document No. 237)*. Similarly, the Defendants contend that "due to poor quality much of the videotape is dark and unviewable with many objects and persons, indistinguishable and unidentifiable." *Mot. at ¶ 7 (Document No. 241)*.

The government responds that it "believes the tape recordings it will offer into evidence are audible, and further believes the videos are clear; however, the government is prepared to offer transcripts as an aid to listen to the tapes, and is currently preparing the same." Resp. at ¶ 5. Additionally, the government represents that it has provided a preliminary list to Defendants' counsel of those audio and video files it may use at trial.

As an initial matter, the Court notes that "[r]ecordings are admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." *United States v. DiSalvo*, 34 F.3d 1204, 1220 (3d Cir. 1994) *(quoting United States v. Arango-Correa*, 851 F.2d 54, 58 (2d Cir. 1988).

It appears to the Court, that the most expedient way for this matter to be resolved, given the large number of tapes which have been produced in this matter and the government's preliminary designation of audio and video files it intends to use, is for the Defendants to specify which tapes they are challenging. Thereafter, the parties can attempt to resolve any challenge(s), and if resolution can not be accomplished, an audibility hearing will be scheduled by the Court.

Accordingly, the parties shall notify the Court on or before **March 30, 2007**, if an audibility hearing is necessary and the anticipated length of time for such hearing.

**MOTION FOR PRETRIAL PRODUCTION OF ALL CO-CONSPIRATOR'S STATEMENTS AND FOR *JAMES* HEARING**,
filed by Defendant Jelani Solomon (Document No. 239),
and joined by Defendant Hanner (Document No. 293)[2]

Defendants request production of all co-conspirator statements and for the Court to conduct a pretrial hearing to determine the admissibility of any alleged co-conspirators' statements. In support of their position, Defendants rely on a decision wherein Judge Kim R. Gibson conducted a *James* hearing to determine the admissibility of purported co-conspirator statements. *See United States v. Giardina*, 2005 WL 3088441 (W.D. Pa. Nov. 17, 2005).

Federal Rule of Evidence 801(d)(2)(E) provides an exception to the hearsay rule to admit into evidence statements of a co-conspirator made during the course of and in furtherance of a conspiracy. Before any such statement may be admitted, however, the proponent must establish by a preponderance of the evidence that (i) the conspiracy existed; (ii) both the defendant and the declarant were members of the conspiracy; and (iii) the statement was made in the course of the conspiracy and in furtherance of the conspiracy. *United States v. McGlory,* 968 F.2d 309, 333 (3d Cir. 1992). In determining whether the statement is admissible as a statement of a co-conspirator, the court may consider the statement itself. *Bourjaily v. United States,* 483 U.S. 171, 181(1987).

Due to the complexity of some conspiracies, it may be difficult, if not impossible, for the government to establish the conspiracy and the participation of the co-conspirators before seeking admission of a co-conspirator's statements. *See United States v. Gambino,* 926 F.2d 1355, 1360 (3d Cir.), *cert. denied,* 502 U.S. 956 (1991). In these instances, the co-

---

[2] The government filed its Response at Document No. 316.

conspirator's statements can be conditionally admitted into evidence, provided that the government establishes the existence of the conspiracy and each conspirator's participation therein before it closes its case. *See, e.g., Gambino*, 926 F.2d at 1360-61; *United States v. De Peri*, 778 F.2d 963, 981 (3d Cir. 1985); *United States v. Ammar*, 714 F.2d 238, 245-47 (3d Cir.), *cert. denied*, 464 U.S. 936 (1983). The difficulty with conditionally admitting a co-conspirator's statement subject to later connection is that, at the close of evidence, the court may determine that the prosecution failed to meet its burden of proof and one or more defendants could claim to have been prejudiced.

To alleviate this concern, district courts in some circuits have conducted pretrial hearings, referred to as "*James* hearings," to determine the existence of a conspiracy. *See United States v. James*, 590 F.2d 575 (5th Cir. 1979); *United States v. Giardina*, 2005 WL 3088441 (W.D. Pa. Nov. 17, 2005). This practice, however, is not the custom in this jurisdiction. The United States Court of Appeals for the Third Circuit has never required district courts to hold a *James* hearing, and has cautioned that the procedure of conditionally admitting conspiracy evidence "should be carefully considered and sparingly utilized by the district courts." *See United States v. Continental Group*, 603 F.2d 444, 457 (3d Cir. 1979); *see also Gambino*, 926 F.2d at 1360-61; *Ammar,* 714 F.2d at 245-47. Moreover, even those courts that encourage *James* hearings have not made such hearings mandatory. *See United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001) (stating that the decision to hold a *James* hearing is left to the sound discretion of the trial judge); *Gonzalez-Montoya,* 161 F.3d at 649 (noting that courts are not required to hold *James* hearings).

The Court notes that the instant case is distinguishable from the *Giardina* case, in which Judge Gibson conducted a *James* hearing. As Judge Gibson noted, the *Giardina* case did "not involve a complex conspiracy with multiple defendants like that in *Continental Group*, where multiple defendants and a large amount of inter-related testimony were involved . . . . Therefore, the Court does not foresee a pre-trial hearing on this matter evolving into a mini-trial." In the case at bar, the government estimates that approximately two (2) dozen witnesses will offer testimony which includes co-conspirator statements in furtherance of either the broad drug conspiracy which is charged at Count 1 of the Superseding Indictment or the related murder conspiracy which resulted in the charge as set forth in Count 6 of the Superseding Indictment. Further, the government argues that conducting a *James* hearing in this case would involve not only an extended "mini-trial," but also would reveal witnesses identities which the government has sought to protect.[3] The Court finds the governments arguments to be persuasive. Accordingly, the Defendants' request for the Court to conduct a *James* hearing is **DENIED**.

Moreover, the Court observes that generally defendants are not entitled to production of co-conspirator statements. However, defendants are entitled to such statements if they constitute or contain *Brady* or *Giglio* material. Since the government has acknowledged its obligations under *Brady and Giglio*, Defendants' motion insofar as it seeks production of any alleged co-conspirator statement is **DENIED AS MOOT**.

---

[3] As reflected in Pre-Trial Scheduling Order No. 1, the government has agreed to provide its witness list to Defendants on or before August 31, 2007.

**SECOND MOTION FOR ADDITIONAL DISCOVERY**
filed by Defendant Jelani Solomon (Document No. 250),
<u>and joined by Defendant Claron Hanner (Document No. 293)</u>[4]

Defendants request additional information regarding Shawn Helisek, the alleged murder weapon, and scientific/polygraph testing, as well as the culpability of others in the murder.

The government has acknowledged its discovery responsibilities under the Rules and *Brady* and its progeny, and the Court has no reason to believe that the government will not to do.  As to Defendants' specific requests, the Court rules as follows.

1. Defendants request all information relating to any investigations which involved Shawn Helisek and anyone against whom Shawn Helisek cooperated.  The government responds that it will provide any impeachment material, along with Jencks material, as directed by the Court in the Pre-Trial Scheduling Order No. 1.  Accordingly, this request is **DENIED WITHOUT PREJUDICE;**

2. Defendants request all information which indicates that Jelani Solomon ever possessed the gun alleged to have been used as the murder weapon in this case.  The government responds that this information will be disclosed at the time of Jencks production.  Accordingly, this request is **DENIED WITHOUT PREJUDICE;**

3. Defendants request the results of any DNA testing conducted relative to the murder weapon alleged to have been used in this case as well as all other scientific testing conducted on the weapon.  The government contends that it has already produced this information.  Accordingly, this request is **DENIED;**

---

[4]     The government filed its response at Document No. 317.

      4.      Defendants request the results of any comparisons of any of the DNA samples obtained from any source in this case to CODIS.  The government responds that "[a]ccording to the PSP lab, there have been no matches in CODIS with the major component."  Accordingly, this request is **DENIED;**

      5.      Defendants request all polygraph questions propounded to any person administered a polygraph concerning the drug crimes alleged in this case or the murder of Frank Helisek, Jr.  The government responds that none of its witnesses in this case was given a polygraph examination.  Accordingly, this request is **DENIED**.

      6.      Defendants request all information as to any individuals, "equally culpable in the crime, . . . including but not limited to Khaliah Solomon."  Doc. No. 251 at 5-6.  The government responds that it "does not believe that anyone's culpability for the killing is equal to that of Jelani Solomon and Claron Hanner," but acknowledges that the information contained in the Jencks material which will be produced "may show culpability of some other(s) in the murder conspiracy."  Accordingly, this request is **DENIED.**

**MOTION FOR DISCLOSURE OF MEDICAL, MENTAL HEALTH, DRUG
AND ALCOHOL TREATMENT, PRESCRIPTION DRUG, JAIL AND SOCIAL
SECURITY RECORDS OF COOPERATING WITNESSES**
filed by Defendant Claron Hanner (Document No. 255),[5]
<u>and joined by Defendant Jelani Solomon (Document No. 283)</u>

Defendants request that the government disclose various medical, drug abuse treatment, disability and jail records for all individuals who defendants believe may be

---

[5]    The government filed its response at Document No. 317, to which Defendants filed their Replies at Document No. 379 (Hanner) and Document No. 389 (Solomon).

government witnesses. A number of the individuals are specifically identified; however, the requests also includes information for "any cooperating witness." Additionally, the Defendants request that that "the government either obtain these records or obtain valid releases from each cooperating witness."

The government acknowledges its obligation to disclose impeachment material it possesses, but maintains that it should not be required to seek out information from agencies which are not involved in the case, or from individuals who have an expectation of privacy in their medical /or other personal records. Further, the government opposes the request for it to have its cooperating witnesses execute valid releases for these records.

The Court finds the position of the government to be reasonable. "There is no question that the government's duty to disclose under *Brady* reaches beyond evidence in the prosecutor's actual possession. Since *Giglio*, 405 U.S. at 154, the Supreme Court has made clear that prosecutors have 'a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.' " *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006) (*quoting Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). To determine whether an entity is acting on the government's behalf, courts have looked to factors such as whether the entity assists the prosecution before and during trial, and whether the entity conducts interrelated or independent investigations from the government. *See Risha,* 445 F.3d 304.

The Court of Appeals for the Third Circuit has defined "constructive possession" as follows:

> We construe the term 'constructive possession' to mean that although a prosecutor has no actual knowledge, he should nevertheless have known

>    that the material at issue was in existence.  Accordingly, we consider
>    *whether the prosecutor knew or should have known of the materials* even
>    though they were developed in another case.

*Id.* at 303 (*quoting United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993)) (emphasis in original).

The Court notes that the government has acknowledged it responsibilities under *Brady* and its progeny and, therefore, this request is **DENIED WITHOUT PREJUDICE**.

The request of the Defendants for the government to obtain valid releases from each cooperating witness for the requested material is **DENIED**.  The Defendants have cited no authority for this proposal, nor has the Court through independent research found any support for this request.

With regard to Defendants' requests for production of specific groups of information, those requests will be address seriatim.

1. Defendants request cooperating witnesses records which reflect drug / alcohol problems, substance abuse treatment and/or mental health treatment, has qualified for Social Security disability, and/or records which would indicate that the witnesses "were taking prescription psychotropic medication at the time of the death of Frank Helisek, Jr., and at the time they were interviewed by prosecution or police agents."  The government responds that such information will be provided with other Jencks / impeachment materials.  Based on the government's representation, this request is **DENIED WITHOUT PREJUDICE**.

2. Defendants request the disclosure of information which pertains to medical / emergency room visits related to drug / alcohol related treatment and/or overdoses.  The government responds that to the extent such information is in its possession, the material will

be provided with other Jencks' impeachment material. Based on the government's representation, this request is **DENIED WITHOUT PREJUDICE**.

      3.     Defendants request all jail records and other institutional records of cooperating witnesses "as such records demonstrate issues related to witness credibility." The government responds that to the extent such information is in its possession, the material will be provided with other Jencks' impeachment material. Based on the government's representation, this request is **DENIED WITHOUT PREJUDICE**.

**MOTION FOR DISCLOSURE OF PRESENTENCE INVESTIGATION REPORTS, PROBATION, PAROLE AND SUPERVISED RELEASE REPORTS AND PROGRESS**
filed by Defendant Claron Hanner (*Document No. 257*),[6]
and joined by Defendant Jelani Solomon (*Document No. 283*)

In these motions, Defendants request that the Court order the disclosure of all presentence investigation reports ("PSIs"), as well as other Probation Office material, such as probation, parole and supervised release reports and progress reports for all witnesses cooperating with the government. In the alternative, Defendants request that the Court conduct an *in camera* review of these materials.

The government responds that while it possesses copies of PSIs for some cooperating witnesses, it does not have in its possession probation, parole, supervised release, and progress reports which are generated and/or maintained by the United States Probation Office.

---

[6]     The Government filed its response at Document 332, to which Defendants filed their Replies at Document No. 381 (Hanner) and Document No. 389 (Solomon).

The government also acknowledges that, to the extent it has learned of exculpatory/impeachment material through review of any witness' PSI, such information must be provided to the defendants. The Court finds that there is no reason to believe that the government will not do so.

The government contends, however, that Defendants have not made a "showing of special need" that would allow them to obtain a copy of the complete PSIs or which would require an *in camera* review of these documents by the Court.

Defendants acknowledge that courts are generally disinclined to disclose PSIs to third parties. *See, e.g., U.S. Dep't of Justice v. Julian,* 486 U.S. 1, 12 (1988) (explaining that "courts have been very reluctant to give third parties access to the presentence investigation report[s]" due to fear that "disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information that will be incorporated into a report" and because of "the need to protect the confidentiality of the information contained in the report")*; United States v. Trevino,* 89 F.3d 187, 192 (4th Cir. 1996) ("the confidentiality of PSRs has always been jealously guarded by the drafters of the federal rules, and by the federal courts"); *United States v. Blanco*, 884 F.2d 1577, 1578 (3d Cir. 1989) ("there is a general presumption that the courts will not grant third parties access to the presentence investigation reports of other individuals").

The United States Court of Appeals for the Third Circuit has not specifically decided whether or under what circumstances third parties should have access to PSIs, although it has addressed the issue of a defendant's access to his co-defendants' PSIs. *See United States v. Blanco*, 884 F.2d 1577, 1578 (3d Cir. 1989). Most appellate courts which have addressed the

11

issue have decided that PSIs should be held confidential and that third parties should not be granted access to the PSI of another person.[7]  However, several courts have permitted a third party to gain access to a PSI in cases where the third party could demonstrate that disclosure will "serve the ends of justice," *United States v. Schlette,* 842 F.2d 1577, 1579 (9th Cir. 1988), or by establishing a "compelling, particularized need for disclosure." *United States v. Huckaby,* 43 F.3d 135, 138 (5th Cir. 1995).  Applying this standard requires a "fact specific inquiry in which the need for confidentiality is balanced against the desirability of releasing a presentence report." *United States v. Preate,* 927 F. Supp. 163, 166-67 (M.D. Pa. 1996).  This determination is committed to the sound discretion of the trial court.  *Huckaby,* 43 F.3d at 138.

In the case *sub judice,* Defendants contend that they are entitled to the PSIs of the government witnesses because many of these witnesses are serious drug abusers or serious drug dealers, all with criminal histories.  Defendants argue that "[t]he PSIs will contain information related to drug/alcohol treatment, conduct related to reliability and other unforeseen sources tending to disclose impeachment avenues necessary for a fair and reliable determination of this case." Def's Memo. at 5.  However, as stated *supra*, the government has acknowledged its responsibility to disclose to the Defendants any impeachment /exculpatory material contained

---

[7]  *See United States Dept. of Justice v. Julian,* 486 U.S. 1, 12 (1988); *United States v. Cianscewski,* 894 F.2d 74, 79 n.17 (3d Cir.1 990); *United States v. Blanco,* 884 F.2d 1577, 1578 (3d Cir. 1989); *Huckaby,* 43 F.3d at 137-38; *United States v. Corbitt,* 879 F.2d 224, 228 (7th Cir. 1989); *United States v. Schlette,* 842 F.2d 1574, 1579 (9th Cir.1 988); *United States v. McKnight,* 771 F.2d 388, 390 (8th Cir. 1985), *cert. denied,* 475 U.S. 1014 (1986); *United States v. Santarelli,* 729 F.2d 1388, 1390 (11th Cir. 1984); *Charmer,* 711 F.2d at 1176.

in the PSIs.  For these reasons, the Court rules that the Defendants' request for disclosure of the PSIs of the government's witnesses is **DENIED AS MOOT.**

In the alternative, Defendants have requested that the Court review the PSIs in camera.  In evaluating a defendant's motion for an in camera review of a witness's PSI, the court may consider the defendant's ability to obtain the desired information through other means.  *See Trevino* at 193, n. 6 ("In evaluating the probable materiality and favorability of the requested information, the district court may consider, among other things, whether the material may be available from other sources. . . .").  At this time, the Court does not believe that an in camera review of the requested PSIs is necessary.  The government has acknowledged that it will disclose all impeachment / exculpatory information contained in the requested PSIs.  Nonetheless, upon disclosure by the government of the redacted PSIs, should the Defendants not be satisfied with the information with which they have been provided, they should immediately advise the Court and the Court will reconsider its decision not to conduct an in camera review.

Although Defendants' motion for an in camera review of the PSIs will be denied at this time, the government is reminded that it has an obligation under *Brady* and its progeny to disclose all impeachment evidence in its possession, including any impeachment evidence in any PSI that may be in its possession.  The Government is permitted to disclose any and all exculpatory/impeachment material contained in the PSIs either (1) by extracting such information from the PSIs, or (2) disclosing PSIs which have been redacted to exclude all non-Brady material.

**REQUEST FOR BILL OF PARTICULARS**
filed by Defendant Claron Hanner (Document No. 260),
<u>and joined by Defendant Jelanie Solomon (Document No. 283)</u>[8]

Defendants request that the government provide a bill of particulars with regard to certain offenses charged in the Superseding Indictment. *See Paragraph 3 (a) - (c) of Request for Bill of Particulars.*

In view of the government's substantive Response, the Motion is **DENIED AS MOOT**.


**MOTION TO IMMEDIATELY DISCLOSE ANY AND ALL CONTACT BETWEEN GOVERNMENT AGENTS OR PROSECUTORS AND POTENTIAL JAILHOUSE INFORMANTS INCARCERATED WITH DEFENDANT HANNER**
(Document No. 262)[9]
and

**MOTION TO IMMEDIATELY DISCLOSE ANY AND ALL CONTACT BETWEEN GOVERNMENT AGENTS OR PROSECUTORS AND POTENTIAL JAILHOUSE INFORMANTS INCARCERATED WITH DEFENDANT, JELANI SOLOMON**
(Document No. 284)

Since his arrest in this capital case, Defendant Hanner has been housed in the Beaver County Jail, the Allegheny County Jail, and the Northern Regional Jail in Moundsville, West Virginia. Likewise, Defendant Solomon also has been housed in a number of facilities

---

[8] The government filed its response at Document No. 303, Defendant Hanner filed his Reply at Document No. 328, and the government filed its Response to Defendant's Reply at Document No. 329.

[9] The government filed its joint response at Document No. 318, to which Defendants filed their Replies at Document No. 380 (Hanner) and Document No. 389 (Solomon).

including the Allegheny County Jail, the Washington County Correctional Facility, SCI Mercer, SCI Greene, and SCI Mahanoy.

In the instant motions, Defendants request that the Court "order the government to immediately disclose any and all jailhouse informant contact (state and federal) regarding the allegations in the indictment and any such conversation[s] the government prosecutors are aware of." Solomon Mot. at ¶ 9.

The United States Supreme Court has held that the government violates a prisoner's right to counsel when it places that prisoner in a cell with a jailhouse informant who "deliberately use[s] his position to secure incriminating information from [the defendant] when counsel was not present." *United States v. Henry,* 447 U.S. 264, 270 (1994); *Massiah v. United States*, 377 U.S. 201 (1964). However, the government does not violate a prisoner's rights where "by luck or happenstance - the State obtains incriminating statements from the accused after the right to counsel has attached." *Kuhlmann v. Wilson,* 477 U.S. 436, 459 (1986).

In response to the Defendants' request, the government responds that "it has not obtained any statements from Jelani Solomon or Claron Hanner, through questioning by government agents or informants, after defendants' Sixth Amendment right to counsel attached in this case." Govt's Response at 3. Accordingly, based on the government's representation, Defendants' motions to immediately disclose any and all contact between government agents or prosecutions and potential jailhouse informants incarcerated with Claron Hanner and/or Jelani Solomon is provisionally **DENIED AS MOOT.** However, based on Defendant Hanner's Reply to the government's Response, the Court will hear legal argument on defendant's request for hearing on **April 2, 2007**, immediately following the conclusion on the hearing of

Defendant Hanner's Motion to Suppress Evidence Seized from Cellular Telephone 412-628-5290.

**MOTION FOR DISCOVERY, INSPECTION AND DISCLOSURE OF EXCULPATORY EVIDENCE CONCERNING GOVERNMENT'S USE OF INFORMANTS, OPERATIVES AND COOPERATING INDIVIDUALS**
filed by Defendant Claron Hanner (Document No. 264)
<u>and joined by Defendant Jelani Solomon (Document No. 283)</u>[10]

Defendants request disclosure of all government informants, and the substance of their debriefings, as well as an extensive list of information, impeachment and otherwise, with regard to such individuals.  The Court notes that throughout the pretrial phase of this prosecution, the government has repeatedly stated that it intends to fully comply with its discovery obligations to produce exculpatory / impeachment material.   The government also notes, however, that it has a privilege to withhold the identity of any informants who are not material witnesses, at least until there is some showing by the Defendants that "disclosure of an informant's identity is relevant and helpful to the defense or is essential to a fair determination of a cause." Govt's Resp. at 11

The Court agrees with the position of the government.  It is well established that the government has the privilege of withholding the identity of confidential informants.  "The purpose of the Government's privilege to withhold from disclosure the identity of [confidential informants]  . . . is the furtherance and protection of the public interest in effective law enforcement." *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *see also United States v.*

---

[10]    The government filed its response at Document No. 317.

*Johnson,* 302 F.3d 139, 139 (3d Cir. 2002). However, the privilege is limited in its application by the "fundamental requirements of fairness." *Roviaro,* 353 U.S. at 59. The Government's privilege must give way where the disclosure of the informant's identity or the contents of his communication is "relevant and helpful" to the defense of the accused or is "essential to the determination of cause." *Id.* at 62; *see also McCray v. Illinois,* 386 U.S. 300, 308-09 (1967) ("What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials.").

The defendant bears the burden of showing the significance of the informant's testimony to his defense. *Pickel v. United States,* 746 F.2d 176, 181 (3d Cir.1984) (citing *United States v. Jiles,* 658 F.2d 194, 197 (3d Cir. 1981)). "[M]ere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro.*" *Jiles,* 658 F.2d at 197. Rather, a defendant must show that the informant can provide <u>material</u> evidence that significantly helps the defendant establish a specific defense. *United States v. Allen,* 566 F.2d 1193, 1194 (3d Cir. 1977)(emphasis added); *United States v. Thomas,* 58 Fed. Appx. 915, 919 (3d Cir. 2003) (non-precedential).

Accordingly, because the government has represented that it will fully comply with its obligations to provide exculpatory / impeachment material, Defendants' motion is **DENIED WITHOUT PREJUDICE**.

So **ORDERED** this 26th day of March, 2007.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Tina O. Miller , Esquire
Assistant U.S. Attorney
Email: tina.o.miller@usdoj.gov

Leo M. Dillon,
Assistant U.S. Attorney
Email: Leo.Dillon@usdoj.gov

Martin A. Dietz, Esquire
Email: MDietzEsq@aol.com

Robert E. Stewart , Esquire
Email: restjs@msn.com

Caroline M. Roberto, Esquire
Email: croberto@choiceonemail.com

Jay T. McCamic , Esquire
McCamic, Sacco, Pizzuti & McCoid, PLLC
Email: jtmccamic@mspmlaw.com