## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 05cr0385-01 |
| | ) | |
| JELANI SOLOMON | ) | |

### MEMORANDUM OPINION AND ORDER OF COURT

April 11, 2007

On February 1, 2007, Defendant Jelani Solomon, through counsel, filed several pretrial motions, including the instant MOTION TO SUPPRESS INTERCEPTED MAIL (*Document No. 235*).

On April 2, 2007, the Court heard legal arguments on the Motion. At the hearing, all parties were represented by counsel who presented and argued the issues skillfully and effectively. No witnesses testified. The government rested on the evidence that it had previously submitted in opposition to the Motion.

The central issue to be determined is whether Defendant Solomon had a reasonable expectation of privacy in his incoming and outgoing mail while he was an inmate at various penal institutions.

For the reasons that follow, the Court finds that Defendant Solomon had no reasonable expectation of privacy in his incoming and outgoing mail and, therefore, will deny the instant Motion to Suppress.

### Background

Defendant Solomon contends that "the government has seized and obtained a significant amount of mail that was either sent by or to Mr. Solomon while he was an inmate at

various penal institutions without Mr. Solomon's consent." Defendant Solomon argues that the search and seizure of his mail was in violation of his constitutional rights under the Constitution of the United States because (i) the mail was searched and seized without a search warrant; (ii) the mail was searched and seized before a search warrant was issued for it; (iii) the mail was seized without sufficient probable cause or exigency; and (iv) Defendant Solomon did not consent to the search or seizure of the mail.

In response, the government contends that neither Jelani Solomon, nor any other federal or state prisoner, has any reasonable expectation of privacy in his non-privileged correspondence. For example, federal regulations require Bureau of Prisons staff to open and inspect all incoming general correspondence, and staff are permitted to read and inspect all outgoing mail from pre-trial inmates. *See 28 C.F.R. § 540.2, et seq.* The Commonwealth of Pennsylvania likewise provides for inspection of non-privileged inmate correspondence. In state correctional facilities, incoming mail is opened and examined and outgoing mail <u>may</u> be examined where there is reason to believe that it may reveal illegal activity. *See* 37 PA Code § 93.2 (emphasis added). In county jails, incoming and outgoing mail <u>may</u> be examined for contraband and <u>may</u> be read by the warden if reasonable grounds exist to believe that receipt of the mail is likely to jeopardize prison security or public safety and welfare, or both. 37 PA Code § 95.234 (emphasis added).

The record evidence reflects the following:

1.     On January 22, 2004, Defendant Jelani Solomon signed a receipt which indicated that he had obtained a Department of Corrections ("DOC") Inmate Handbook, which

contains a provision that all incoming inmate mail will be opened and may be read when there

is reason to believe that the mail may be used for "illegal activity" pursuant to DC-ADM 803.

      2.    DC-ADM 803 provides in pertinent part as follows:

> Incoming and outgoing correspondence, other than privileged
> correspondence, may be opened and inspected if there is reason to believe
> that the security of the facility may be impaired or this directive is being
> violated.  Incoming and outgoing correspondence, other than privileged
> correspondence, may be read upon the written order of the Regional
> Deputy Secretary and reproduced upon written order of the respective
> Regional Deputy Secretary . . . .

Exhibit 4, DC-ADM 803, VI. Procedures, A. Mail Privileges, at ¶ 7.

      3.    On February 19, 2004, Detective Robert Heberle, Jr., of the Beaver County

District Attorney's Office, telefaxed a request to Captain David Orwig at SCI Camp Hill, which

requested monitoring of Jelani Solomon's mail and phone calls.  *See* Exhibit 5.[1]  Captain

---

[1]    The request from Detective Robert Heberle, Jr., reads in its entirety as follows:

> On 1/19/2004 Frank Helisek was murdered in the Borough of New Brighton.  The
> investigation has revealed that one Claron Levi Hanner participated in the homicide
> and has been arrested.  Hanner at the time was dating Jelani Solomon's sister who
> did assist in having Claron Hanner escape authorities.  The victim's son was to
> testify against Jelani Solomon on a drug trial the week of 1/19/2004.  The Beaver
> County Detective Bureau is requesting that SCI Camp Hill monitor any and all
> letters coming and going from inmate Jelani Solomon. If Jelani Solomon does have
> phone privileges we would request that these be monitored also.
>
> Thank you,
> Detective Robert Heberle Jr.

3

Orwig, in turn forwarded the request to Superintendent Donald L. Kelchner, who approved the request.

4.      On March 9, 2004, Captain Orwig forwarded a second  request from Detective Heberle to Superintendent Donald L. Kelchner, in which Detective Heberle asked that certain pieces of correspondence be copied and forwarded to him.  Superintendent Kelchner forwarded this request to Mary Byrd Leftridge, Regional Deputy Secretary, who approved the request on March 9, 2004 at 3:15 P.M.

5.      On April 13, 2004, Detective Heberle telefaxed a request to Superintendent Edward Klem at SCI Mahoney, which requested monitoring of Jelani Solomon's incoming and outgoing mail and that copies of same be forwarded to him.  Detective Heberle also requested that all phone calls of Jelani Solomon be monitored and CD copies of these calls be forwarded to the Beaver County District Attorney's Detective Bureau.[2]  On that same day, Detective Heberle's request was granted.  *See* Exhibit 9.

6.      On January 9, 2006, SRCF Mercer received a United States District Court grand jury subpoena which requested copies of all incoming/outgoing mail to and/or from Jelani Solomon.  "The purpose of the request is pursuant to an official criminal investigation of a suspected felony being conducted by the Drug Enforcement Agency."

**Discussion**

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.  U.S. Const. amend. IV.

---

[2]      The wording of Detective Heberle's request to SCI Mahoney was similar, if not identical, to the request Dective Heberle made the previous month to SCI Camp Hill.  *See* Exhibit 8.

The Fourth Amendment protects against governmental invasions into a person's legitimate expectation of privacy, which has two components: (i) the person must have an actual expectation of privacy, and (ii) the person's subjective expectation must be one that society deems to be reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

Given the realities of institutional confinement, any reasonable expectation of privacy a detainee retains necessarily is of diminished scope. *Bell v. Wolfish,* 441 U.S. 520, 557 (1979).[3] Although inmates do not forfeit all constitutional protections by reason of their confinement in prison, *Wolff v. McDonnell,* 418 U.S. 539, 555-56 (1974), the threshold determination is whether a prisoner's expectation is "legitimate" or "reasonable."

In *Stroud v. United States,* 251 U.S. 15, 21-22 (1919), the United States Supreme Court held that there was no violation of the Fourth Amendment when letters containing incriminating material written by a prisoner were intercepted by prison personnel and later introduced against him at trial. The Supreme Court noted that the letters came into the possession of prison officials under established practice, reasonably designed to promote institutional discipline. *Id.* at 21. Several circuit courts subsequent to *Stroud* have held that jail officials do not violate an inmate's Fourth Amendment rights by inspecting the inmate's mail. *See, e.g., Stow v. Grimaldi,* 993 F.2d 1002, 1004-05 (1st Cir. 1993) (holding that a New Hampshire State Prison practice of requiring nonprivileged outgoing mail to be submitted for inspection in unsealed envelopes does not violate prisoners' constitutional rights); *Smith v.*

---

[3]     That the Fourth Amendment rights of prisoners are limited has been consistently recognized. *See, e.g., Hudson v. Palmer*, 468 U.S. 517 (1984) (inmate had no reasonable expectation of privacy in his prison cell entitling him to protection of Fourth Amendment).

*Delo,* 995 F.2d 827, 830 (8th Cir. 1993) (prison officials are justified in screening outgoing

nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity); *United*

*States v. Whalen,* 940 F.2d 1027, 1034-35 (7th Cir.), *cert. denied,* 502 U.S. 951 (1991) (holding

that because prison officials are permitted to examine inmate mail to ensure that the mail does

not interfere with the orderly running of the prison, contain threats, or facilitate criminal

activity, there is no expectation of privacy in mail that inmates are required to leave unsealed);

*United States v. Kelton,* 791 F.2d 101, 103 (8th Cir. 1986) (prisoner's Fourth Amendment

rights were not violated when prison official inspected and copied prisoner's outgoing mail);

*Smith v. Shimp,* 562 F.2d 423, 426-27 (7th Cir. 1977) (reasoning that when a pretrial detainee

sends non-privileged mail, he knowingly exposes same to possible inspection by jail officials

and consequently yields to reasonable search and seizure); *United States v. Baumgarten*, 517

F.2d 1020, 1028 (8th Cir.), *cert. denied,* 423 U.S. 878 (1975) (holding that, under

circumstances where prisoner knew of official policy of reading prisoners' outgoing and

unsealed mail, prisoner cannot say the state gained access to contents of a letter by unlawful

search and seizure).

   The record undeniably demonstrates that the Department of Corrections has a written

policy which informs all prisoners that their mail, both incoming and outgoing, may be

inspected; that Defendant Solomon had received a copy of the DOC Inmate Handbook, which

reflected this policy; and that Detective Heberle had requested the monitoring of Defendant

Solomon's mail as part of an investigation into the homicide of Frank Helisek.   When a

prisoner is made aware that his nonlegal mail may be subjected to official scrutiny, pursuant to

institutional policies, the inmate's constitutional rights are not violated by the subsequent

examination of such mail because he or she has no reasonable expectation of privacy in it.

Accordingly, the Court finds and rules that Defendant Solomon had no expectation

of privacy in either his incoming or outgoing mail while incarcerated.

### Conclusion

For all these reasons, the Motion to Suppress Intercepted Mail filed by Defendant

Jelani Solomon will be denied.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 05cr0385-01 |
| | ) | |
| JELANI SOLOMON | ) | |

**ORDER OF COURT**

AND NOW, this 11th day of  April, 2007, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the

MOTION TO SUPPRESS INTERCEPTED MAIL filed by Defendant Jelani Solomon is

**DENIED.**

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     Tina O. Miller , Esquire
        Assistant U.S. Attorney
        Email: tina.o.miller@usdoj.gov

        Leo M. Dillon,
        Assistant U.S. Attorney
        Email: Leo.Dillon@usdoj.gov

        Martin A. Dietz, Esquire
        Email: MDietzEsq@aol.com

        Robert E. Stewart , Esquire
        Email: restjs@msn.com

        Caroline M. Roberto, Esquire
        Email: croberto@choiceonemail.com

        Jay T. McCamic , Esquire
        McCamic, Sacco, Pizzuti & McCoid, PLLC
        Email: jtmccamic@mspmlaw.com