# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 02: 05cr385 |
| | ) | |
| JELANI SOLOMON | ) | |
| CLARON HANNER | ) | |

## MEMORANDUM OPINION AND ORDER

April 25, 2007

Presently before the Court for disposition are the following:

• MOTION FOR SEVERANCE, with brief in support, filed by Defendant Claron Hanner (*Document Nos. 253 and 254, respectively*);

• SECOND MOTION TO SEVER, with brief in support, filed by Defendant Jelani Solomon (*Document Nos. 272 and 273, respectively*) and joined by Defendant Hanner (Document No. 293);

• The government's joint RESPONSE to the above motions *(Document No. 323)*;

• Defendant Hanner's REPLY to the government's Response (*Document No. 382*);

• Defendant Solomon's REPLY to the government's Response (*Document No. 390*); and

• The government's SUR-REPLY to Defendant Solomon's Reply (*Document No. 391*).

Both Defendants have argued that severance is appropriate although their arguments for severance vary. Most of the claims are the type one might find in any case with multiple defendants, for example, that severance is required by *Bruton v. United States*, 391 U.S. 123 (1968), because of admissions by a co-defendant, or that severance is warranted under Federal Rule of Criminal Procedure 14 because of mutually antagonistic defenses. But there are also claims unique to the facts of this case and to the severe penalty the government seeks: This is a drug conspiracy case and Count Six of the Superseding Indictment alleges that both Defendants violated Title 18, United States Code, sections 924(c)(1)(A), 924(j)(1) and 2, by using a firearm during and in relation to a drug trafficking crime and causing the death of a person through the use of said firearm, which crime carries a potential penalty of death.

## Background

On March 28, 2006, a nine-count Superseding Indictment was returned against Jelani Solomon, Claron Hanner, and Wanda Solomon.[1]   The Superseding Indictment charges Defendants as follows:

| | |
|---|---|
| Count One - Jelani Solomon, Claron Hanner, and Wanda Solomon | Conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine from in and around 1999 and continuing to in and around November 2005, in violation of Title 21, United States Code, § 846. |

---

[1]     On August 2, 2006, Wanda Solomon pled guilty to Count One of the Superseding Indictment. On March 2, 2007, Wanda Solomon was sentenced to 240 months of imprisonment. On March 30, 2007, Wanda Solomon filed an appeal of her sentence to the United States Court of Appeals for the Third Circuit. *See* Court of Appeals Docket No. 07-1937.

Count Two - Jelani Solomon        Receipt of a firearm by a person under indictment in
                                  and around 2003, in violation of Title 18, United
                                  States Code, section 922(n).

Count Three -  Jelani Solomon     Carrying and using a firearm in relation to a drug
                                  trafficking crime in and around 2003, in violation of
                                  Title 18, United States Code, § 924(c)(1)(A).

Count Four - Jelani Solomon       Possession of a firearm by a convicted felon in and
                                  around 2003 to 2004, in violation of Title 18, United
                                  States Code, § 922(g)(1).

Count Five - Claron Hanner        Possession of a firearm by a convicted felon in and
                                  around 2003 to 2004, in violation of Title 18, United
                                  States Code, § 922(g)(1).

Count Six - Jelani Solomon        Using a firearm in furtherance of a drug trafficking
and Claron Hanner                 crime and causing the death of a person through the
                                  use of said firearm, on or about January 19, 2004, in
                                  violation of Title 18, United States code, §
                                  924(c)(1)(a), 924(j)(1), and 2.

Count Seven - Jelani Solomon      Possession with intent to distribute and distribute less
                                  than 500 grams of cocaine, on or about January 19-20,
                                  2004, in violation of Title 21, United States code,
                                  sections 841(a)(1) and 841(b)(1)(C).

Count Eight - Jelani Solomon       Possession with intent to distribute and distribute 500
                                  grams or more of cocaine, on or about January 19-20,
                                  2004, in violation of Title 21, United States code,
                                  sections 841(a)(1) and 841(b)(1)(B)(ii).

Count Nine - Claron Hanner        Possession with intent to distribute and distribute 50
                                  grams or more of cocaine base on January 20, 2004, in
                                  violation of Title 21, United States code, sections
                                  841(a)(1) and 841(b)(1)(A)(iii).

3

The glue connecting these counts and Defendants Jelani Solomon and Claron Hanner is their alleged common membership in a cocaine distribution operation which Jelani Solomon allegedly operated from 1999 to November 2005. The government argues that all of the charges in the Superseding Indictment are "logically related and properly joined." In support of its argument, the government posits as follows:

> During the course of the conspiracy, Jelani Solomon sold drugs to Shawn Helisek, who later became an informant for the State Attorney General's Office and made controlled money deliveries to Solomon. After Solomon was arrested based on Shawn Helisek's cooperation, Solomon continued to operate his drug conspiracy and distribute cocaine. In an effort to promote his drug enterprise, as well as to retaliate against Shawn Helisek and intimidate him, Solomon hired Claron Hanner to kill Shawn Helisek's father, Frank Helisek, Jr. (Counts One and Six). Jelani Solomon (a convicted felon (Count Four) who was also facing state charges (Count Two) acquired a Glock 9 mm handgun by trading drugs for the gun (Count Three) and gave it to Claron Hanner. Hanner, a convicted felon (Count Five), ultimately used the gun to kill Mr. Helisek, the night before Jelani Solomon's state court drug trial. (Count Six).

*Govt's Response to Solomon's First Motion to Sever, at 14-15.*

## DISCUSSION

There is a presumption against severing charges or defendants that are indicted together, especially in cases involving a conspiracy charge, unless the defendants can show that the trial would be manifestly unfair. *Virgin Islands v. Sanes,* 57 F.3d 338, 341-42 (3d Cir. 1995). The initial joinder must involve the same acts or series of acts to be proper. Fed. R. Crim. P. 8(b); *United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991). If the Court finds that joinder is proper then it must weigh the potential prejudicial effect verses the expense and time of separate trials that basically retry the same issue. *United States v. Joshua,* 976 F.2d 844, 847 (3d Cir. 1992); Fed. R. Crim. P. 14.

4

The "proper inquiry is whether evidence is such that the jury cannot be expected to 'compartmentalize' it and then consider it for its proper purpose." *United States v. Dansker,* 537 F.2d 40, 62 (3d Cir. 1976) (*citing United States v. DeLarosa,* 450 F.2d 1037, 1065 (3d Cir. 1971)). If the government has charged conspiracy in good faith, then that allegation alone is sufficient reason for trying conspiracy and all substantive offenses together. *United States v. Sharma*, 190 F.3d 220, 230 (3d Cir. 1999).

There exists a preference in the federal system for joint trials of defendants who are indicted together. *See Zafiro v. United States,* 506 U.S. 534 (1993); *accord United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005). Joint trials "play a vital role in the criminal justice system." *Id.* In fact, the United States Supreme Court has repeatedly approved joint trials because such trials promote efficiency and "serve justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* "Generally speaking, where several defendants are jointly indicted they should be tried together," particularly where the charges against them arise out of the same series of acts or transactions. *Id.* In addition, joint trials of defendants charged under a single conspiracy aid the finder of fact in determining the "full extent of the conspiracy," *United States v. Provenzano,* 688 F.2d 194, 199 (3d Cir.), *cert. denied,* 459 U.S. 1071 (1982), and prevent "the tactical disadvantage to the government from disclosure of its case." *United States v. Jackson,* 649 F.2d 967, 973 (3d Cir.), *cert. denied,* 454 U.S. 1034 (1981). *See also United States v. Thornton*, 1 F.3d 149, 152 (3d Cir. 1993) (holding that where all defendants were charged in participating in a single overarching drug conspiracy, joinder was appropriate.)

As a result, when defendants have been properly joined under Rule 8(b), "a district court should grant a severance under [Federal Rule of Criminal Procedure] 14 only if there is a

serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; Fed. R. Crim. P. 14.

A defendant has "a heavy burden in gaining severance." *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994). However, "the standards for severance are necessarily leavened by the fact this is a death penalty case. The threshold for determining what constitutes prejudice and when the jury's ability to render a reliable verdict is compromised is necessarily lower than in the ordinary case." *United States v. Green*, 324 F. Supp.2d 311, 320 (D. Mass. 2004) (*citing United States v. Perez*, 299 F. Supp.2d 38 (D. Conn. January 14, 2004)) (granting severance based on evidentiary concerns "given the heightened need for reliability in a death penalty trial").

Defendants are not entitled to a severance merely because they may have a better chance of acquittal in separate trials or because the evidence is different as to each defendant. Rather, district courts should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro*, 506 U.S. 538. Because differing levels of evidence are inherent in joint trials, "[p]rejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant or some evidence adduced is more damaging to one defendant than others." *United States v. Console,* 13 F.3d 641, 655 (3d Cir. 1993). Rather, the preferred remedy in such a situation is to instruct jurors regarding which evidence is admissible against which defendant. *See Zafiro*, 506 U.S. at 540-41; *United States v. Voight*, 89 F.3d 1050, 1096 (3d Cir. 1996). Further, severance is not appropriate when the

same or substantially the same evidence will be presented in both trials.  *See Console,* 13 F.3d at 655.

In the case *sub judice,* the defendants stress different arguments in their motions for severance.  The Court will discuss each defendant's motion separately.

A.       Motion for Severance filed by Defendant Claron Hanner

1.       *Defendant Solomon's Pre-Trial Conduct and Anticipated Conduct at Trial*

Defendant Hanner argues that "[t]hroughout pre-trial litigation of this matter, Jelani Solomon's conduct has been calculated to prejudice Mr. Hanner and show disrespect to this Court and for the rule of law."  Def. Hanner's Memo. at 3.  In support of his argument, Defendant Hanner points to the direct mailing by Defendant Solomon to the Court of a purported "affidavit" allegedly signed by Defendant Hanner and contends that Defendant Solomon's pre-trial conduct "serves as a mere prelude to what he will do at Hanner's expense, during trial and before a jury."  *Id.*

In further support of his position, Defendant Hanner states that "Solomon has demonstrated antagonism towards Mr. Hanner's Due Process rights by objecting to Hanner's request for an extension of time to file pre-trial motions . . . ."  Def. Hanner's Memo. at 4.  The Court finds these arguments to be without merit.

On October 10, 2006, Defendant Solomon filed his first motion to sever, which included as grounds for severance his objection to any extension of time to file pre-trial motions.  However, by Memorandum Opinion and Order of Court dated November 3, 2006, this Court ruled that Defendant Solomon's speedy trial argument as grounds for severance was

unfounded.  The Speedy Trial Act's excludable periods for the resolution of pretrial motions apply to all defendants in a multi-defendant case, regardless of whether all of them joined in the pretrial motions filed. 18 U.S.C. § 3161(h)(7).   Furthermore, neither the fact that Defendant Solomon objected to his co-defendant's request for an extension of time to file pre-trial motions or that Defendant Solomon mailed directly to the Court an "affidavit" are issues that the Court envisions will be presented to the jury.

Defendant Hanner also contends that "Solomon's obstreperous behavior toward this Court foreshadows a trial before a jury fraught with outbursts and unruliness which Hanner legitimately fears may spill over into deliberation regarding his fate."  Def. Hanner's Memo. at 4.  The Court finds that any argument about Defendant Solomon's "anticipated" disruptive behavior is entirely speculative and speculation is not a sound basis for severance.   The jury in this matter will be properly and continuously instructed that they are to consider the guilt or innocence of each defendant separately and, if need be, will be instructed not to make judgments based on the personalities demonstrated by the defendants during trial.

### 2.  *Antagonistic Defenses and Trial Strategies*

Defendant Hanner argues that he has "reason to believe that Solomon's trial strategy will be to disavow all responsibility for the death of Mr. Helisek and entirely blame Mr. Hanner for the shooting."  Def. Hannner's Memo. at 3.

The Supreme Court has stated that while "mutually antagonistic" defenses may, in some circumstances, support severance, such defenses presented in the same case are not prejudicial *per se*.  *Zafiro,* 506 U.S. at 538.  Instead, in such circumstances the tailoring of relief

to be granted, if any, is left "to the district court's sound discretion." *Id*. at 539.  Mutually antagonistic defenses are those where the defenses conflict "to the point of being irreconcilable and mutually exclusive." *United States v. Provenzano,* 688 F.2d 194 (3d Cir. 1982) (quoting *United States v. Crawford,* 581 F.2d 489, 491 (5th Cir. 1978)).  "[M]utually exclusive defenses . . . exist when acquittal of one co-defendant would necessarily call for the conviction of the other."  This type of situation arises "when one person's claim of innocence is predicated solely on the guilt of a co-defendant."

In determining whether mutually antagonistic defenses exist such that severance may be required, the court must ascertain whether "the jury could reasonably construct a sequence of events that accommodates the essence of all [parties' ] defenses." *United States v. Voigt,* 89 F.3d 1050, 1094 (3d Cir. 1996) (citing references omitted). "[C]ourts have consistently held that finger-pointing and blame-shifting among co-conspirators do not support a finding of mutually antagonistic defenses." *Id.* at 1095 (citing *Provenzano,* 688 F.2d at 198).  Indeed, as our appellate court has indicated, "[s]ince *Zafiro,* claims based on mutually antagonistic defenses have usually been found insufficient to warrant severance without a strong showing that such specific rights were impaired." *United States v. Balter,* 91 F.3d 427, 433 (3d Cir.), *cert. denied,* 519 U.S. 1011 (1996).  Further, the *Balter* opinion noted, it was aware of no cases reversing the denial of severance on the ground that one co-defendant might become a "second prosecutor" of another alleged co-conspirator at trial. *Id.* at 434.

In the instant case, Defendant Hanner has failed to show that any anticipated mutually antagonistic defenses will likely impair any specific trial right or prevent the jury from making a reliable determination of guilt or innocence. While the Court can only speculate as to

9

the nature of Defendant's defenses, it is not apparent that there will be irreconcilable conflicts,

or that, with proper curative instructions and evidentiary rulings, prejudice cannot be avoided.

To the extent that Defendant Solomon's theory of "antagonistic" defenses are based upon

testimony of witnesses, Defendant Hanner will have ample opportunity for cross-examination

and rebuttal.  Therefore, the Court finds and rules that at this juncture, there is no reliable

evidence of antagonism among the parties of the type to justify severance on that basis.


B.        Second Motion to Sever filed by Jelani Solomon

        1.        *Sixth Amendment - Bruton Statements*

        Defendant Solomon "believe[s] that the government intends to introduce various

statements attributed to Mr. Solomon's co-defendant, Claron Hanner, that demonstrate that

Claron Hanner admitted to killing Frank Helisek, Jr. . . . The alleged statements of Claron

Hanner will necessarily be statements of a "non-testifying co-defendant" and Mr. Solomon will

be unable to exercise his Sixth Amendment right to cross-examine this witness."  Def. Solomon

Memo. at 2.[2]

        The government responds that the statements in question are excepted from *Bruton*

because they are non-hearsay, co-conspirator statements and, in the alternative, if the co-

---

[2]        To date, the government has not produced any alleged *Bruton* statements to
        Defendant Solomon, however counsel for Defendant Solomon has been advised
        that such statements exist.  *See* Def Solomon's Memo at 2, n.1. The extent to which
        these statements may inculpate Mr. Solomon is not known at this time by counsel
        for defendant or the Court.

conspirator hearsay exception does not apply, the statements may be redacted or even excluded.

In *Bruton v. United States*, 391 U.S. 123, 135-37 (1968), the United States Supreme Court held that a defendant is deprived of his Sixth Amendment right to confront his accuser when the incriminating confession of a non-testifying codefendant is introduced at their joint trial.  However, not all non-testifying codefendant statements are barred by the Sixth Amendment.  For instance, a statement, not incriminating on its face, that only implicates the defendant when evaluated by the jury in connection to other admitted evidence is admissible. *Richardson v. Marsh,* 41 U.S. 200, 211 (1987) ("the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."). That being said, the government cannot evade *Bruton's* restrictions by simply removing a defendant's name from a statement and replacing it with "an obvious blank, the word 'delete,' a symbol," or any other substitution that would "similarly notify the jury that a name has been deleted."  *Gray v. Maryland,* 523 U.S. 185, 195 (1998).

Without knowing what the statements are or without seeing any proposed redaction, the Court finds that any severance determination based upon *Bruton* issues would be premature at this time.  If and when Defendant Solomon identifies any problematic statements same will be addressed by the Court prior to trial.  Importantly, even if such statements exist, they do not necessarily require severance.  Therefore, the Court will address these matters if, and when, they arise.

2.      *Disparity of Inculpatory Evidence*

Defendant Solomon argues that although both Defendants are facing the death penalty, there has been "scant evidence produced during discovery that Mr. Solomon had any relationship with Claron Hanner or that Mr. Solomon otherwise participated in the murder of Frank Helisek, Jr." Def. Solomon's Memo. at 3.  Therefore, Defendant Solomon contends that based on the "disparity of inculpatory evidence" against him, he will be severely "prejudiced by the fact that the government attributes a substantial amount of physical evidence to its theory of guilt of his co-defendant, Claron Hanner" and a severance is warranted under Rule 14.

At the outset, the Court recognizes that this case may involve different degrees of culpability among the co-defendants, a factor which raises the risk of prejudice.  However, any potential prejudice arising from different degrees of culpability can be remedied by the Court through appropriately tailored instructions at trial.  *See Zafiro*, 506 U.S. at 538 (finding that jury instructions "sufficed to cure any possibility of prejudice").  As the Court of Appeals for the Third Circuit has stated, "[n]either a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles seemingly less culpable defendants to severance." *United States v. Eufrasio,* 935 F.2d 553, 568 (3d Cir. 1991).  "Prejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant <u>or some evidence adduced is more damaging to one defendant than others</u>." *United States v. Console,* 13 F.3d at 655 (emphasis added). Rather, the preferred remedy in such a situation is to instruct jurors regarding which evidence is admissible against which defendant.  *See Zafiro,* 506 U.S. 540-41; *United States v. Voigt*, 89 F.3d 1050, 1096 (3d Cir. 1996).

12

The Court is not convinced, at this stage of the proceeding, that any anticipated disparity of inculpatory evidence is likely to constitute "a serious risk" that the jury will not make "a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539.   Multi-defendant trials are quite common in the federal system, and many involve evidence that is admissible against one defendant, but not against another.  *Richardson v. Marsh*, 481 U.S. at 209-10. Federal courts, quite routinely, have found juries able to follow and abide by appropriate cautionary instructions.  *See, e.g., United States v. Salameh,* 152 F.3d 88, 116-17 (2d Cir. 1998), *cert. denied,* 526 U.S. 1028 (1999) ("[A]ny possible prejudice was eliminated by the district court's repeated admonitions to the jury that each defendant's guilt had to be separately and individually considered.")

Defendant Solomon has presented no reason to conclude that the jury in this case will be unable to follow and abide by appropriate cautionary instructions given by the Court throughout the trial.  Accordingly, the Court concludes that the "disparity of inculpatory evidence"does not warrant a severance under Rule 14.

3.     *Potential Conflicts at Penalty Phase*

Defendant Solomon also argues that a severance is warranted "because of the conflict between due process right of rebuttal and a co-defendant's right to withhold penalty phase evidence until trial."  Def. Solomon's Memo. at 7.  Defendant Solomon argues that "[g]iven the fact that Claron Hanner's legitimate efforts  to mitigate his case may in fact provide 'aggravation' to Mr. Solomon's case requires severance in this case."  *Id.* at 8.

13

While it may be true that Defendant Hanner's efforts to mitigate his case may provide "aggravation" to Mr. Solomon's case, the Court finds that it is entirely speculative at this juncture that Defendant Hanner will produce any evidence which would have the effect of Defendant Solomon's concern.  Speculation is not a sound basis for severance.  In addition, Defendant Solomon will have the opportunity to testify or to present any other mitigating evidence to the jury during the penalty phase, should such a phase be required.[3]  It is clear, therefore, that Defendant Solomon and his counsel will have the opportunity to present evidence and comment on facts that may influence the jury's sentencing decision.

Defendant Solomon also observes that no "notice provisions exist to ensure" that he will have a "fair opportunity to investigate and rebut the harmful information placed before the sentencing jury by his co-defendant."  While this observation is reasonably accurate, the Court notes that Defendant Solomon will have the opportunity to seek to exclude any such harmful evidence on various grounds, including Rules 402 and 403 of the Federal Rules of Evidence, as and if warranted.

Lastly, Defendant Solomon argues that the "conflict between the comparative culpability mitigating factor of 18 U.S.C. § 3592(a)(4) and the Eighth Amendment right to an individualized sentence yields yet another basis for severance."  Def. Solomon's Memo. at 8-9.

---

[3]      *See Skipper v. South Carolina,* 476 U.S. 1, 5 (1986) (holding that exclusion from the sentencing hearing of the testimony petitioner proffered regarding his good behavior during the over seven months he spent in jail awaiting trial deprived petitioner of his right to place before the sentencer relevant evidence in mitigation of punishment, particularly when government relied on future dangerousness as an aggravating factor).

14

At a joint sentencing hearing, the jury is directed to compare the defendant's culpability with the culpability of his co-defendant(s).  *See* 18 U.S.C. § 3592(a)(4) (Jury must consider as mitigating factor that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death."). Defendant argues that the effect of this comparison "could be to create pressure for blanket imposition of death sentences on all co-defendants who played equal roles in the capital crime itself, despite the existence of mitigating factors arising from the character, disabilities and backgrounds of individual co-defendants."  Def. Solomon's Memo. at 10.

The care which courts afford to protect a capital defendant's constitutional right to an individualized determination does not inevitably translate to automatic severance during capital sentencing proceedings.  See *Gregg,* 428 U.S. at 187 (holding that when a defendant's life is at stake, the Court must be particularly sensitive to insure that every safeguard is observed.)  A careful voir dire process and cautionary curative instructions will generally remedy any possible prejudice to the defendants.  *See U.S. v. Taylor,* 293 F. Supp.2d 884, 889 (N.D. Ind. 2003) (same jury empaneled for both phases because juries are able to follow limiting instructions and give separate consideration to each defendant as constitutionally required).  Proper jury instructions provide guidance and reduce the likelihood that the death sentence will be imposed in an erratic, freakish, biased, or inequitable manner.  *Gregg,* 428 U.S. at 189-190 ("[A]ccurate sentencing information is an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die by a jury of people who may never before have made a sentencing decision.").  "It is quite simply a hallmark of our legal system that juries be carefully and adequately guided in their deliberations."  *Id.* at 193.  Indeed, courts who have faced the issue have found that jury instructions will suffice to cure any prejudice to defendants' rights.  *See*

*Tipton,* 90 F.3d at 892 (risk of prejudice reduced to constitutionally tolerable level because the jury was frequently instructed on the need to give each defendant an individualized consideration); *U.S. v. Rivera,* 363 F. Supp.2d 814, 822-23 (E.D. Va. 2005) (denying pre-trial severance request and holding that "threat posed to individualized consideration will best be addressed by a joint penalty phase governed by the Court's limiting instructions"); *Taylor,* 293 F. Supp.2d at 889 (same jury empaneled for both phases because juries are able to follow limiting  instructions and give separate consideration to each defendant as constitutionally required).

        In this case, should a penalty phase of the trial be required, the Court will instruct the jury at the commencement of same that it is required to keep in mind that each juror must give separate consideration to the evidence concerning each individual defendant.  Such is precisely the type of instruction that safeguards a defendant's Eighth Amendment right to an individualized determination.  A capital jury is presumed, at both the penalty phase and the trial phase, to understand and follow its guiding instructions.  *Richardson,* 481 U.S. at 206. Therefore, the Court finds and rules that under the Federal Death Penalty Act ("FDPA") an individualized determination is achievable even when proceeding jointly as there are several mechanisms available, including jury instructions, to safeguard defendant's rights.  The Court recognizes, however, that there are situations in which the combined effect of proper instructions or limited witness examination will not suffice to cure the risk of prejudice to defendant's rights.  If the Court in its discretion finds that such a situation has arisen in which there is indeed a high risk of incurable prejudice, it will be more inclined to determine that some form of severance may in fact be warranted.  However, at this stage of the proceeding, the

Court is not persuaded that an individualized determination is not achievable which would

warrant severance.


    4.     *Request for Empanelment of Two Juries*

      Defendant Solomon requests that "he be tried before a guilt/innocence jury which has

not been subject to death qualifications, and, if convicted of a capital offense, that a separate

jury be impaneled to determine the proper punishment in this case."  Def. Solomon's Memo. at

15.

      Section § 3593(b) of the FDPA establishes that the sentencing hearing should be

conducted before the same jury that determined the defendant's guilt, and only in a few

enumerated exceptions should another jury be empaneled.  A separate jury will be empaneled to

determine defendant's sentence <u>only</u> if:

      (A) the defendant was convicted upon a plea of guilty;

      (B) the defendant was convicted after a trial before the court sitting without a jury;

      (C) the jury that determined the defendant's guilt was discharged for good cause; or

      (D) after initial imposition of a sentence under this section, reconsideration of the
      sentence under this section is necessary.

18 U.S.C.A. § 3593(b).[4]  Thus, the language of the statute does not countenance the actual

variation on severance that Defendant Solomon proposes, which would result in empaneling

two juries.  In sum, the statute favors a unitary jury and the Court finds that the interests of

justice do not warrant empaneling a second jury for the penalty phase.

---

    [4]      At this time, none of the statutory exceptions apply to either Defendant Solomon or
Defendant Hanner.

5.      *Request for Bifurcated Penalty Hearings*

Lastly, Defendant Solomon moves the Court to bifurcate the penalty phase of the trial, should one be required, so that the first phase would involve a preliminary jury determination of his eligibility for the death penalty followed by a second phase in which the government would present evidence regarding non-statutory aggravators.  *Def Solomon's Memo. at 15-16.* Statutory aggravators which might make the defendant eligible for the death penalty are not simply sentencing factors, but elements of the capital crime itself. *See Ring v. Arizona,* 356 U.S. 584 (2000).

A bifurcated process is not required by 18 U.S.C. § 3593(c).  In fact, the statute contemplates the conduct of a unitary proceeding and, while not prohibiting potentially prejudicial information, provides that the district court may exclude certain information if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. 18 U.S.C. § 3593(c).  Nevertheless, the statute does not forbid a bifurcated sentencing proceeding.

The government responds that there is no need for a bifurcated proceeding.  However, the Court is concerned that a unitary proceeding may have the potential for unfair prejudice and confusion of the issues.  The cure for the potential unfair prejudice and/or confusion may be to restructure when the jury will make its determinations on the various state of mind, aggravating, and mitigating factors.  In *United States v. Davis*, 912 F. Supp. 938 (E.D. La. 1996),  the court declared its intention to use the following process to avoid improper exposure to unrelated information at inappropriate time:

> [I]f the penalty phase is reached in this case, the court is considering bifurcating
> the hearing into two parts. The first part would focus exclusively on the two

18

findings the jury must make in order to consider the death penalty-whether the intent element was established and whether at least one statutory aggravating factor was proven. This phase of the penalty hearing presumably would rely almost entirely upon the evidence already presented in the guilt phase and involve little, if any, additional information. It would nonetheless insure that the jury's findings as to intent and the statutory factors would not be influenced by exposure to the separate and unrelated nonstatutory factors and information. Should the jury make the two requisite threshold findings, the hearing would then continue into the presentation of the nonstatutory aggravating and mitigating information.

*Davis,* 912 F. Supp. at 949. The Court has under serious consideration a similar procedure to that utilized in the *Davis* case, as described below.

The first phase of the penalty hearing, if reached, would  be an "eligibility phase," which would involve the presentation of evidence on the requisite state of mind (18 U.S.C. § 3591(a)) and the statutory aggravating factors (18 U.S.C. § 3592(c)). If the jury fails to find at least one applicable state of mind  factor or, alternatively, does not find the existence of at least one statutory aggravating factor, the death penalty cannot be imposed.  The trial will be concluded and the punishment will be a life sentence.

However, if the jury finds at least one applicable state of mind  factor and at least one "statutory" aggravating factor beyond a reasonable doubt, Defendant will be  "eligible" for the death penalty. Therefore, the case would continue with the "penalty phase," in which the jury will consider the existence of "non-statutory" and "mitigating" factors. The jury must then weigh all of the aggravating factors it has found to exist against all of the mitigating factors that have been found to exist, and determine by unanimous vote whether the defendant should be sentenced to death.  *See* 18 U.S.C. 3593(e).[5]

---

[5]        In accordance with section 3593(e), the jury will be instructed to:

(continued...)

Should the Court decide to bifurcate the penalty phase, all counsel of record will be notified immediately and will be provided with an Order detailing the procedure to be utilized.

## Conclusion

In conclusion, none of the many arguments offered by Defendants mandate that severance be granted at this time. Defendants have failed to show that "that a joint trial [will] compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539. As a result, the trials of Jelani Solomon and Claron Hanner, who were indicted together, will proceed together.

However, if the penalty phase of the trial is reached in this case, same may be bifurcated into first an "eligibility phase," to be immediately followed, if need be, by a "penalty phase."

An appropriate Order follows.

McVerry, J.

---

[5](...continued)
"consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote . . . shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence. " 18 U.S.C. § 3593(e).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 02: 05cr385 |
| | ) | |
| JELANI SOLOMON | ) | |
| CLARON HANNER | ) | |

### ORDER OF COURT

AND NOW, this 25th day of April, 2007, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED** as follows

    1.    The Motion for Severance filed by Defendant Claron Hanner is **DENIED**; and

    2.    The Second Motion to Sever filed by Defendant Jelani Solomon is **DENIED IN**

**PART AND GRANTED IN PART.**


                      BY THE COURT:


                      s/Terrence F. McVerry
                      United States District Court Judge

cc:      Tina O. Miller , Esquire
Assistant U.S. Attorney
Email: tina.o.miller@usdoj.gov

Leo M. Dillon,
Assistant U.S. Attorney
Email: Leo.Dillon@usdoj.gov

Martin A. Dietz, Esquire
Email: MDietzEsq@aol.com

Robert E. Stewart , Esquire
Email: restjs@msn.com

Caroline M. Roberto, Esquire
Email: croberto@choiceonemail.com

Jay T. McCamic , Esquire
McCamic, Sacco, Pizzuti & McCoid, PLLC
Email: jtmccamic@mspmlaw.com