IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 02: 05cr385 |
| | ) | |
| JELANI SOLOMON and | ) | |
| CLARON HANNER | ) | |

**MEMORANDUM OPINION AND ORDER**

May 14, 2007

Before the Court for disposition are the following:

• MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION BECAUSE THE 1994 FEDERAL DEATH PENALTY ACT IS UNCONSTITUTIONAL, with brief in support, filed by Defendant, Claron Hanner (*Document Nos. 330*), which Defendant Jelani Solomon has joined (*Document No. 377*);

• MOTION TO DECLARE FEDERAL DEATH PENALTY UNCONSTITUTIONAL, with brief in support, filed by Defendant Jelani Solomon (*Document Nos. 351 and 352*); and

• the Government's Joint RESPONSE in opposition (*Document No. 374)*.

Defendants have argued that the Federal Death Penalty Act ("FDPA") is facially unconstitutional for a variety of reasons. At the outset, the Court notes that near identical challenges have been raised in other federal capital cases and the arguments have been uniformly rejected by either the United States Supreme Court and/or various courts of appeals and district courts.

For the reasons set forth below, Defendants' motions will be **DENIED** in all respects.

**SUPERSEDING INDICTMENT**

On March 28, 2006, a grand jury sitting in the Western District of Pennsylvania returned a nine-count Superseding Indictment in which Defendants Jelani Solomon and Claron Hanner were charged, *inter alia*, with using a firearm in furtherance of a drug trafficking crime and causing the death of a person through the use of said firearm, on or about January 19, 2004, in violation of Title 18, United States Code, § 924(c)(1)(a), 924(j)(1), and 2. (*See* Count Six of the Superseding Indictment).[1] Essentially, the charges contained in the Superseding Indictment arise from the allegations that Defendant Jelani Solomon paid his co-defendant, Claron Hanner, drugs and money to kill Frank Helisek, Jr., who was the father of Shawn Helisek, a person who was purportedly going to testify against Defendant Solomon at a state court trial on January 20, 2004. On the eve of trial, January 19, 2004, Frank Helisek, Jr., was murdered in his home. The government alleges that Defendant Solomon solicited this murder to retaliate against and intimidate Shawn Helisek.

The government has served notice that it intends to seek the death penalty if the defendants are convicted of Count Six of the Superseding Indictment.

**DISCUSSION**

A criminal defendant has the burden of proving that a federal statute is unconstitutional. *See e.g., Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001). A

---

[1] The Superseding Indictment also includes a Notice of Special Findings section, which tracks the language of the four "gateway" statutory aggravating factors which must be proved to make a defendant "eligible" to receive a sentence of death. *See* 18 U.S.C. § 3591(A)(2). The Notice of Special Findings also tracks the language of three of the statutory aggravating factors provided in 18 U.S.C § 3592©, which the jury can consider in rendering a sentence of death in a federal capital case.

defendant challenging the constitutionality of a federal statute "must establish that no set of circumstances exists under which the act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Further, any court which considers the constitutionality of a federal statute has a duty to construe statutes to avoid "constitutional infirmity." *Salinas v. United States*, 522 U.S. 52, 59-60 (1997). It is well established that if one interpretation yields serious constitutional questions while another is reasonable and ameliorates constitutional problems, courts must side with the argument that avoids such problems. *See Hooper v. California*, 155 U.S. 649, 657 (1895).

I.  <u>The FDPA Does Not Violate Defendants' Eighth Amendment Rights</u>

Defendants argue that the imposition of the death penalty is unconstitutional and is a violation of their Eighth Amendment rights because: (i) the infrequency with which the death penalty is sought violates *Furman v. Georgia*, 408 U.S. 238 (1972); (ii) the death penalty is applied in an arbitrary and capricious manner as there is no intelligible difference between the cases in which the death penalty is sought and/or imposed and those in which it is not; and (iii) the death penalty is imposed on the invidious basis of race.

    A.  *Infrequency and Arbitrariness in the Application of the FDPA*

Initially, the Court notes that it is not for this Court to determine whether the government's decisions to seek the death penalty are consistent. Rather, this Court can only judge the constitutionality of the statute that allows for the death penalty.

The decision to prosecute, including the decision to seek the death penalty, rests with the prosecutor. *See McClesky v. Kemp,* 481 U.S. 279, 296-97 (1987); *United States v. O'Driscoll*, 203 F. Supp. 2d 334, 341 (M.D. Pa. 2002). The mere fact that the death penalty is rarely sought, or even more rarely imposed, does not of itself render the FDPA unconstitutional. *United States v. Sampson,* 275 F. Supp. 2d 49, 88 (D. Mass. 2003); *O'Driscoll*, 203 F. Supp. 2d 334. Constitutional questions arise only when the risk of arbitrariness becomes "sufficiently substantial." *Furman,* 408 U.S. at 295.

As noted in the government's response, Defendants' argument has been explicitly rejected previously by a number of courts. *See, e.g., United States v. Sampson,* 275 F. Supp.2d 49 (D. Mass. 2003); *United States v. O'Driscoll,* 203 F. Supp.2d 334 (M.D. Pa. 2002); *United States v. Hammer*, 25 F. Supp.2d 518 (M.D. Pa. 1998). This Court agrees with the decision of these courts and finds that the FDPA scheme is not unconstitutional on this basis.

B.    *No Principled Basis for Distinguishing Between Cases In Which The Federal Death Penalty is Imposed and Those In Which It Is Not.*

Defendants next argue that the absence of any principled basis for distinguishing between cases in which the federal death penalty is imposed from cases in which it is not necessarily renders the FDPA unconstitutional. In support of this argument, Defendants present pages of synopses from cases with reprehensible conduct that in some instances resulted in a death finding and in others a lesser sentence. What is notably missing from their argument, however, is any case law which specifically adopted the Defendants' view. Absent such authority, the Court is not willing to strike down an Act of Congress that has consistently withstood various constitutional challenges.

      C.    *Racial Disparities*

Last, Defendants argue that there exists racial discrimination in the administering of the death penalty.[2] This argument is without merit and can be summarily denied. To prove an equal protection claim, defendants must establish that the government has acted in a discriminatory fashion and that the application of the FDPA as applied to Defendants is a result of discrimination. *See McClesky v. Kemp*, 481 U.S. 279, 291-89 (1987). Defendants have shown neither here. Absent such a showing, it is impossible for this Court to conclude that Defendants are discriminated against because they belong to a certain race. *See also* Memorandum Opinion and Order, May 2, 2007 (Document No. 439).

II.    <u>The FDPA Fully Comports With The Sixth Amendment Requirements of *Ring v. Arizona* and *Cunningham v. California*</u>

      A.    *The Weighing Process*

Both Defendants allege constitutional deficiencies in the FDPA's failure to require jury determination that aggravating factors outweigh mitigating factors beyond a reasonable doubt. *See Cunningham v. California, -- U.S. ---,* 127 S. Ct. 856 (2007); *Ring v. Arizona*, 536 U.S. 584 (2002). In sum, Defendants contend that the weighing process is the functional equivalent of an element of the capital crime and, therefore, death selection must be reached only if the aggravating factors outweigh mitigating factors beyond a reasonable doubt.

---

[2]    Defendants argue that the FDPA discriminates against minorities and those accused of killing white victims. Hanner's Mot. at 15-22.

In *Cunningham,* the Supreme court reiterated the "bright-line rule" from its *Apprendi* lines of cases to be that, "[e]xcept for a prior conviction, 'any <u>fact</u> that increases the penalty for a crime must be submitted to a jury, and proved beyond a reasonable doubt." *Cunningham*, - - U.S. -, 127 S. Ct. at 868 (emphasis added) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). *See also Jones v. United States,* 526 U.S. 227 (1999); and *Ring v. Arizona,* 536 U.S. 584 (2002) (which applied the rule of *Apprendi* and *Jones* to death penalty cases).

The FDPA provides that a jury must make three findings in order for a death sentence to be imposed: (i) that a defendant convicted of a crime punishable by death acted with the requisite intent, 18 U.S.C. § 3591(a)(2); (ii) that at least one statutory aggravating factor exists, 18 U.S.C. § 3593(c); and (iii) that

> all the aggravating factor or factors found to exist *sufficiently outweigh* all the mitigating factor or factors found to exist to justify a sentence of death or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

18 U.S.C. § 3593 (emphasis added). Then, "[b]ased upon this consideration"

> the jury by unanimous vote . . . shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

With respect to the requisite burden of proof, the FDPA requires the government to prove to a unanimous jury, beyond a reasonable doubt, the gateway intent factors and any aggravating factors. 18 U.S.C. §§ 3591(a)(2), 3593©, (d). By contrast, the requisite standard of proof for the third factor, *i.e.,* the weighing of the aggravating factor(s) and the mitigating factor(s), is a sufficiency of the evidence determination.

Defendants argue that because the finding that aggravation outweighs mitigation is "essential to" a death sentence, the Sixth Amendment requires that it be proven by the

6

prosecution beyond a reasonable doubt. Defendants concede, however, that a number of other courts have reached a different conclusion on the weighing issue prior to *Blakely and Booker*,[3] and that at least one appellate court has rejected this argument since *Blakely and Booker.*[4]

Defendants appear to be arguing that the weighing process equates to a "finding of fact" which increases the maximum punishment to which the Defendants may be exposed, and thus, the Sixth Amendment would require that it be found beyond a reasonable doubt.

As the government aptly notes, a defendant's intent at the time of his or her crime as well as the determination of any statutory aggravating factor are clearly determinations of fact which must be decided by a jury. However, unlike intent factors and aggravating factors, the jury's weighing process does not involve "any finding of fact." Rather, this determination by the jury is a "consideration" of whether a sentence of death is justified in light of the facts of the case. As the Court of Appeals for the Eighth Circuit explained in United States v. *Purkey*:

> Further, it makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause. In the words of the statute, it is a "consideration," 18 U.S.C. § 3593(e), - that is, the lens through which the jury must focus the facts that it has found to produce an individualized determination regarding 'whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence. (citations omitted).

*Purkey,* 428 F.3d 738, 750 (8th Cir. 2005).

---

[3]  *See, e.g., United States v. Haynes,* 269 F. Supp. 2d 970, 980 (W.D. Tenn. 2003); *Brice v. State*, 15 A.2d 314, 322 (Del. 2003); *Torres v. State*, 58 P.3d 214, 21 (Okla. Crim. App. 2002).

[4]  *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2006) (stating "it makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause.")

It appears to the Court that the comparative weight of the aggravating and mitigating factors, and whether such factors justify a death sentence, has no independent existence outside the minds of the individual jurors in the deliberation room. As such, the weighing process describes a "consideration" not a "fact." Accordingly, the Court finds that the analysis of the appellate court in *Purkey* is persuasive, and rejects Defendants' argument that the FDPA is unconstitutional under *Ring* and *Cunningham.*

B.   *The FDPA and the Grand Jury Indictment*

Defendant Solomon also argues that the FDPA does not provide any mechanism by which aggravating factors and other essential elements may be pled by indictment. Defendant argues that this presents a fatal flaw in the FDPA and that "the prosecution attempt to rescue the FDPA via the grand jury's 'Special Findings' is ineffective and void." Solomon Memo. at 73 (Document No. 352).

The Court finds this argument to be without merit. It is clear that mens rea and aggravating factors, which increase the maximum penalty for a crime, must be treated as though they are essential elements of the offense. As such, they "<u>must be charged in an indictment,</u> submitted to a jury, and proven beyond a reasonable doubt." *Jones,* 526 U.S. at 243 n. 6 (emphasis added). Although *Ring* did not expressly address whether these factors must be charged in an indictment because the issue was waived by the defendant in that case, "it appears to be a foregone conclusion that [mens rea and] aggravating factors that are essential to the imposition of the death penalty must appear in the indictment." *United States v. Regan*, 221 F. Supp.2d 672, 679 (E.D. Va. 2002); *Fell*, 217 F. Supp.2d at 483 ("[T]he clear imposition of

[*Ring*], resting as squarely as it does on *Jones,* is that in a federal capital case the Fifth Amendment right to a grand jury indictment will apply."); *Lentz*, 225 F. Supp.2d at 680 (same); *O'Driscoll*, 2002 WL 32063818 at *2 ("The *Ring* opinion along with prior and subsequent action by the Supreme Court suggests strongly that the intent and statutory aggravating factors justifying the imposition of a death sentence must be alleged in the indictment and we so conclude."). As a result, the government may only seek the death penalty if mens rea and aggravating factors are explicitly found by the grand jury in the returned indictment.

The special notices found in the Superseding Indictment satisfy the rights of the Defendant under the Indictment Clause of the Fifth Amendment without violating the plain language of the FDPA. Indeed, the government can, as it has here, easily comply with its constitutional and statutory obligations by first submitting a case to the grand jury and then filing a notice of its intention to seek the death penalty. *See United States v. Le*, 327 F. Supp. 2d 601, 610 (E.D. Va. 2004).

Despite the arguments of Defendant to the contrary, there is nothing that prevents a grand jury from making special findings as to statutory aggravating factors. The grand jury historically has had broad authority to conduct investigations and report criminal conduct. *See United States v. Williams*, 504 U.S. 36, 48 (1992). Nothing in the FDPA or any other federal law prevents the grand jury from considering certain factual circumstances and other factors which are the functional equivalent of elements of a capital crime. The Court notes that numerous other courts have considered the silence of the FDPA on the role of the grand jury and each has found that a grand jury has the authority to make special findings as to culpable mental states and statutory aggravating factors. *See, e.g., United States v. LeCroy,* 441 F.3d 914 (11th

Cir. 2006); *United States v. Allen,* 406 F.3d 940 (8th Cir. 2005); *United States v. Robinson,* 367 F.3d 278 (5th Cir. 2004); *United States v. Barnette,* 390 F.3d 775 (4th Cir. 2004*); United States v. Lenz*, 225 F. Supp.2d 672, 680-81 (E.D. Va. 2002); *United States v. Church*, 218 F. Supp.2d 813, 814-15 (W.D. Va. 2002).  Accordingly, the Court finds and rules that the procedure utilized by the government in this case has the dual effect of protecting the due process rights of Defendant and leaving the FDPA in tact.  The Court finds that there is nothing improper or unconstitutional about this and Defendants' arguments to the contrary are without merit.

III.     The Evidentiary Standard of the FDPA During The Sentencing Phase Does Not Violate Defendant's Due Process Rights

Defendant Solomon further contends that the FDPA is unconstitutional because the FDPA permits the admission of evidence at the penalty phase of a capital trial that would not be admissible under the Federal Rules of Evidence.  *See* 18 U.S.C. § 3593©.  Defendant Solomon contends that a relaxed evidentiary standard at the penalty phase of the trial renders jury findings unreliable - a condition at odds with the need for greater reliability in death penalty cases. Solomon Memo. at 33-45.

A number of courts have previously considered and rejected this argument.  *See United States v. Fell*, 360 F.3d 135 (2d Cir. 2004);  *United States v. Minerd,* 176 F. Supp. 2d 424, 435-36 (W.D. Pa. 2001) (listing various decisions).  Without doubt, a "heightened reliability" is essential to the process of imposing a death sentence which requires that the sentencing body be presented with as full and complete an understanding of the case as possible. *Fell*, 360 F.3d at 143.  The evidentiary standard of the FDPA comports with this reasoning by excluding only evidence whose probative value is outweighed by the danger of unfair prejudice

10

to the defendant. *Id*. at 144. The FDPA allows presentation of evidence to the jury that the Federal Rules of Evidence would exclude. By encouraging the introduction of all relevant information about the individual on trial, the FDPA promotes this "heightened reliability." *Id*. Therefore, the Court finds and rules that the evidentiary standard at the penalty phase of the trial under the FDPA does not render the finding(s) of the jury unreliable and does not violate Defendant's due process rights.

IV.  **The FDPA Should Not Be Declared Unconstitutional Because Of The Risks of Executing Innocent People**

Defendants contend that "death is different" and that the appreciable risks of executing innocent people by use of the FDPA requires a finding that the Act is unconstitutional.

The United States Court of Appeals for the Second Circuit appears to be the only appellate court to have addressed this specific argument. In rejecting the argument, the appellate court stated as follows:

> [T]he argument that innocent people may be executed - in small or large numbers - is not new; it has been central to the centuries-old debate over both the wisdom and the constitutionality of capital punishment, and binding precedents of the Supreme Court prevent us from finding capital punishment unconstitutional based solely on a statistical or theoretical possibility that a defendant might be innocent.

*United States v. Quinones*, 313 F.3d 49, 63 (2d Cir. 2002), *cert. denied*, 540 U.S. 1051 (2003). [5]

---

[5]  Defendants rely on the district court decision in *Quinones*, 205 F. Supp.2d 256 (S.D. N.Y. 2002), which was reversed by the United States Court of Appeals for the Second Circuit. The Court notes that Defendants candidly concede the decision having been reversed.

In addition to the Second Circuit, at least three district courts have likewise rejected a contention that the FDPA is unconstitutional based on the potential that an innocent defendant may be executed. *United States v. James,* 2007 WL 914249 (E.D. N.Y. March 24, 2007); *United States v. Sablan,* 2006 Wl 1028780 (D.Colo. Apr. 18, 2006); *United States v. Mikos*, 2003 WL 22110948 (N.D. Ill. Sept. 11, 2003). The district court in *Sablan* reasoned:

> While the dissent in [Herrera v. Collins, 506 U.S. 390 (1993)] stated that the petitioner in that case could raise a substantial due process challenge on the grounds that he was actually innocent, this is not the argument advanced by Defendant . . . in this case. While execution of an innocent person would surely violate that person's substantive due process rights, here Defendant argues the FPDA is a *per se* violation of the Fifth Amendment. In order for Defendant to succeed on his *per se* challenge, he must show that the FDPA always operates to deprive defendants of their substantive due process rights. Defendant has failed to make such a showing.

*Sablan*, 2006 WL 102880, at *13.

The facial appeal of Defendants' argument is certainly of some moment. At the same time, however, the argument is one that has met with virtually no success over the years from a jurisprudential standpoint. Inasmuch as the available authorities have rather uniformly taken a position contrary to that advocated by Defendants, the Court, while recognizing that a risk such as suggested by Defendants may be said to exist, is constrained to reject the argument. Ultimately, the Court agrees with the reasoning of the Second Circuit that "the Supreme Court has upheld state and federal statutes providing for capital punishment for over two hundred years, and it has done so despite a clear recognition of the possibility that, because our judicial system . . . is fallible, innocent people might be executed." *United States v. Quinones*, 313 F.3d 49, 65 (2nd Cir. 2002).

V. <u>The FDPA Should Not Be Declared Unconstitutional As Cruel and Unusual Punishment And As a *Per Se* Denial of Due Process in All Cases</u>

Last, Defendant Solomon argues that this Court should declare the FDPA unconstitutional because the death penalty itself is cruel and unusual punishment in violation of the Eighth Amendment and is a *per se* denial of due process. Defendant candidly recognizes "that every present member of the United States Supreme Court apparently accepts the proposition that the death penalty, under some circumstances, is constitutional." Def Solomon's Memo. at 90. Nevertheless, Defendant contends that in determining whether punishments are so disproportionate as to be "cruel and unusual" the appropriate standard is one based upon "evolving standards of decency which will eventually convince the American people that it is wrong and immoral to kill people in an effort to teach people it is wrong and immoral to kill people." Def. Solomon's Memo. at 90.

While recent advances in technology have enabled some defendants to successfully challenge their convictions and death sentences based on claims of actual innocence, the Court does not find that society's standards of decency have evolved such that the death penalty is *per se* cruel and unusual punishment in violation of the Eighth Amendment. *See McClesky*, 481 U.S. at 300-03; *Gregg v. Georgia*, 428 U.S. 153, 168-87, 177-78, 183 (1976) (the death penalty is not *per se* cruel and unusual punishment in violation of the Eighth Amendment); *United States v. Jones,* 132 F.3d 232, 242 (5th Cir.1998), *aff'd*, 527 U.S. 373 (1999).

**Conclusion**

For the reasons hereinabove set forth, the motions filed by Defendants to declare the federal death penalty unconstitutional are denied.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 02: 05cr385 |
| | ) | |
| JELANI SOLOMON and | ) | |
| CLARON HANNER | ) | |

**ORDER OF COURT**

AND NOW, this 14th day of May, 2007, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

• The Motion to Preclude the Death Penalty As a Sentencing Option Because the 1994 Federal Death Penalty Act is Unconstitutional, filed by Defendant Claron Hanner, is **DENIED**; and

• The Motion to Declare Federal Death Penalty Unconstitutional, filed by Defendant Jelani Solomon, is **DENIED.**

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Tina O. Miller , Esquire
Assistant U.S. Attorney
Email: tina.o.miller@usdoj.gov

Leo M. Dillon,
Assistant U.S. Attorney
Email: Leo.Dillon@usdoj.gov

Martin A. Dietz, Esquire
Email: MDietzEsq@aol.com

Robert E. Stewart , Esquire
Email: restjs@msn.com

Caroline M. Roberto, Esquire
Email: croberto@choiceonemail.com

Jay T. McCamic , Esquire
McCamic, Sacco, Pizzuti & McCoid, PLLC
Email: jtmccamic@mspmlaw.com