## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 02: 05cr385 |
| | ) | |
| JELANI SOLOMON | ) | |

### MEMORANDUM OPINION AND ORDER

Presently pending before the Court is the MOTION TO STRIKE NOTICE OF

INTENT TO SEEK DEATH PENALTY OR, IN THE ALTERNATIVE, MOTION TO

DISMISS SPECIFIC AGGRAVATING FACTORS (*Document Nos. 338 and 349*) filed by

Defendant Jelani Solomon, and the Response in Opposition filed by the Government

(*Document No. 375*).

### BACKGROUND

On March 28, 2006, a federal grand jury returned a nine-count Superseding

Indictment in which Defendant Jelani Solomon ("Solomon") was charged in Count Six with

"using a firearm in furtherance of a drug trafficking crime and causing the death of a person

through the use of said firearm" on or about January 19, 2004, in violation of Title 18, United

States Code, sections 924(c)(1)(A), 924(j)(1), and 2.[1]

---

[1]     The Superseding Indictment also named as defendants Claron Hanner and Wanda
Solomon.   On August 2, 2006, Wanda Solomon pled guilty to Count One of the
Superseding Indictment, which charged her (and the other two co-defendants) with
the crime of conspiracy to distribute and possess with intent to distribute five (5)
kilograms or more of a mixture and substance containing a detectable amount of
cocaine, in violation of Title 21, United States Code, § 846.  On March 2, 2007,
Wanda Solomon was sentenced to 240 months of imprisonment.

On June 26, 2007, Claron Hanner pled guilty to Count Six of the Indictment, which
charged him and Defendant Solomon with the crime of using a firearm in
(continued...)

On April 5, 2006,  Solomon appeared before the court for arraignment and entered a not guilty plea.  On December 29, 2006, the government filed its Notice of Intent to Seek The Death Penalty ("Notice of Intent"), with respect to Count Six of the Superseding Indictment. This case is presently scheduled for trial, with jury selection to commence on September 4, 2007.

The Notice of Intent specifies the following with regard to certain statutory factors which justify the ultimate sanction:

> I (b).    Jelani Solomon intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Frank Helisek, Jr. died as a direct result of such act or acts (18 U.S.C. § 3591(a)(2)(C)); and
>
> I (c).    Jelani Solomon intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constituted a reckless disregard for human life, and Frank Helisek, Jr. died as a direct of such act or acts (18 U.S.C. § 3591(a)(2)(D)).
>
> II(a).    Procurement of Offense by Payment.  Jelani Solomon procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value (18 U.S.C. § 3592(c)(7)); and
>
> II(b).    Substantial Planning and Premeditation.  Jelani Solomon committed the offense after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)).

Notice of Intent ¶¶ I(b), I(c), II(a), and II(b).

---

[1](...continued)
furtherance of a drug trafficking crime and causing the death of a person through the use of said firearm, in violation of Title 18, U.S.C. §§ 924(c)(1)(A), 924(j)(1), and 2.  His sentencing will be scheduled at a later date.

The Notice of Intent also lists the following non-statutory aggravating factors: future dangerousness, knowingly targeting an innocent victim, motive to obstruct justice / to intimidate or retaliate against a witness, and victim impact. (Notice of Intent ¶¶ III (a), (b), (c), and (d)).

Defendant challenges the Notice of Intent on a host of issues, both as to the statutory aggravating factors and the non-statutory aggravating factors, which the Court will address seriatim.

## LEGAL FRAMEWORK

Sentencing in a federal capital case is composed of two discrete phases. *See* 18 U.S.C. § 3591, *et seq.* The first phase, "eligibility," requires the factfinder to determine whether the defendant qualifies for the death penalty, while the second phase, "selection," necessitates a decision as to whether a particular defendant "should in fact receive that sentence." *Tuilaepa v. California,* 512 U.S. 967, 972 (1994). In both the eligibility and selection inquiries, the process must be "neutral and principled so as to guard against bias or caprice in the sentencing decision." *Id.* at 973.

To be eligible for the death penalty in a homicide case, the factfinder must convict the defendant of capital murder, finding the requisite "intent" as delineated in 18 U.S.C. § 3591(a)(2). Next, it must find beyond a reasonable doubt the existence of at least one statutory aggravating factor for which the defendant received notice. *See* 18 U.S.C. § 3592(c)(1)-(16) and 3593(c) & (e); *see also Tuilaepa*, 512 U.S. at 971-72.

If the defendant is eligible for the death penalty, the factfinder proceeds to the selection phase.  The jury must weigh any aggravating factors proven beyond a reasonable doubt to the satisfaction of a unanimous jury against mitigating factors proven by a preponderance of the evidence found by at least one juror to make "an individualized determination on the basis of the character of the individual and the circumstances of the crime" of whether this defendant should receive a death sentence.  *Zant v. Stephens*, 462 U.S. 862, 879 (1983).  *See also* 18 U.S.C. §§ 3593(d)-(e) (requiring the factfinder to weigh mitigating and aggravating factors to determine whether a sentence of death is justified and discussing burdens of proof during sentencing).  The aggravating factors may include non-statutory aggravating factors put forth by the government.  18 U.S.C. § 3593(a) (stating that aggravating factors may include "any other relevant information" provided that the government provides notice to the defendant).

The Court's screening of aggravating factors is essential in channeling, directing and limiting the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty.  *See Arave v. Creech*, 507 U.S. 463, 470-71 (1993).  "[A]ggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not."  *Lewis v. Jeffers*, 497 U.S. 764, 776 (1990).  To come before the sentencer, an aggravating factor cannot be unconstitutionally vague, overbroad, duplicative or irrelevant.  *See Tuilaepa*, 512 U.S. at 973 (vagueness); *Arave,* 507 U.S. at 473 (overbroad); *United States v. Tipton*, 90 F.3d 861, 899 (4th Cir. 1996), *cert. denied,* 520 U.S. 1253 (1997) (duplicative); *United States v. Lenz,* 225 F. Supp. 2d 666 (E.D. Va. 2002) (discussing vagueness, overbroad, double-counting, and relevance).

4

Vague and overbroad aggravating circumstances are impermissible.  An aggravator is vague if it lacks "some common-sense core of meaning . . .  that criminal juries should be capable of understanding." *Tuilaepa,* 512 U.S. at 973.  Vagueness review is "quite deferential" since it "is not susceptible of mathematical precision." *Id*.  A factor is overbroad if "the sentencer fairly could conclude that an aggravating circumstance applies to <u>every</u> defendant eligible for the death penalty." *Arave*, 507 U.S. at 474.  In other words, if an aggravating factor applies to all defendants convicted of murder, it is unconstitutionally overbroad.  *See Tuilaepa,* 512 U.S. at 972 (stating that the factor "may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder").

Unconstitutionally irrelevant or duplicative aggravating factors may not come before the jury either.  A relevant factor is one that assists the sentencer "in distinguishing 'those who deserve capital punishment from those who do not . . . .'" *United States v. McVeigh*, 944 F. Supp. 1478, 1488 (D. Colo. 1996) (*quoting Arave*, 507 U.S. at 474).  If the aggravator has only a tangential relationship to a determination of who is more worthy of receiving a sentence of death, it should be excluded from the sentencer's review.

Last, duplicative aggravating factors may pose constitutional problems.  The Court of Appeals for the Fourth Circuit has reasoned that aggravating factors that duplicate each other are prohibited; "a submission [of multiple overlapping aggravating circumstances] . . . that permits and results in cumulative findings of more than one of the . . . circumstances as an aggravating factor is constitutional error." *Tipton*, 90 F.3d at 899.  The concern is that aggravating factors "that duplicate each other may impermissibly skew a jury in favor of imposing the death penalty." *United States v. Regan*, 228 F. Supp. 2d 742, 751 (E.D. Va.

5

2002).  Although the sentencer may review information that duplicates elements of the

underlying offense as an aggravating factor, it is unconstitutional error for the same aggravating

factor to be considered by the sentencer more than once, even if dressed in new clothing.

        In deciding whether to admit information with regard to any aggravating factor at

sentencing, the Court must ensure that such information is relevant, reliable, and less

prejudicial than probative.  *See* 18 U.S.C. § 3593(c); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

At the same time, the Court should lean in favor of admitting as much information as possible

to allow the jury to make an individualized determination of whether the defendant merits the

death penalty.  *United States v. Davis*, 912 F. Supp. 938, 941 (E.D. La. 1996).  The Federal

Death Penalty Act ("FDPA") provides the following guidance:

> The government may present any information relevant to an aggravating
> factor for which notice has been provided under subsection (a).
> Information [during the penalty phase] is admissible regardless of its
> admissibility under the rules governing admission of evidence at criminal
> trials except that information may be excluded if its probative value is
> outweighed by the danger of creating unfair prejudice, confusing the
> issues, or misleading the jury.

18 U.S.C. § 3593(c).  In sum, information submitted in the penalty phase must be relevant to

the aggravating factors, and its probative value may not be outweighed by the danger of

creating unfair prejudice.  *Id.*  In addition, the information must satisfy the "heightened

reliability" requirements of capital sentencing, in light of the finality of the penalty.  *See., e.g.,*

*Lockett*, 438 U.S. at 604.[2]  At the same time, it is " 'desirable' for the jury to have 'as much

_____

[2]     The United States Supreme Court has emphasized that "heightened reliability" is
essential during death penalty proceedings due to the finality of the result.  *See*
*Woodson,* 428 U.S. at 305 ("[T]he penalty of death is qualitatively different from a
sentence of imprisonment, however long, [thus] . . .  there is a corresponding

(continued...)

information before it as possible' when deciding the penalty."  *Davis*, 912 F. Supp. at 941

(*quoting Gregg v. Georgia,* 428 U.S. 153, 204 (1976)).  Consequently, the Court must struggle

with an often cited inherent tension in capital cases - between reliability and providing the jury

with as much information as possible to make an individualized determination of whether the

defendant merits the death penalty.  *Davis,* 912 F. Supp. at 941-43 (describing this tension

through Supreme Court capital jurisprudence) (*citing, inter alia, Furman v. Georgia*, 408 U.S.

238 (1972), *Woodson v. North Carolina*, 428 U.S. 280 (1976), *Gardner v. Florida,* 430 U.S.

349 (1977)).


## DISCUSSION

A.      <u>Does The Notice Of Intent Provide Sufficient Notice As Required By The
        Constitution of the United States and by Statute</u>

        Defendant argues at the outset that the Notice of Intent in this case must be dismissed

"because it fails to provide sufficient notice as required by the Fifth and Sixth Amendments to

---

[2](...continued)
        difference in the need for reliability in the determination that death is the
        appropriate punishment in a specific case.").  To achieve this heightened degree of
        reliability, "the Supreme Court has also made clear that . . . *more* evidence, not less,
        should be admitted on the presence or absence of aggravating and mitigating
        factors." *United States v. Fell,* 360 F.3d 135, 143 (2d Cir. 2004) (citing *Gregg,* 428
        U.S. at 203-04 ("We think it desirable for the jury to have as much information
        before it as possible when it makes the sentencing decision")); *see also Zant v.
        Stephens,* 462 U.S. 862, 879 (1983) ("What is important at the selection stage is an
        *individualized* determination on the basis of the character of the individual and the
        circumstances of the crime.").

the Constitution and by Title 18 U.S.C. § 3593." Def's Memo. at 10.  The Court finds this argument to be without merit.

The Fifth Amendment explains that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. amend. V.  The purpose of the Indictment Clause is to ensure that a defendant's jeopardy is limited "to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960).

The Indictment Clause and the notice requirement of the Sixth Amendment require that a defendant be notified of the charges against him through a recitation of the elements of the offense and a description of the charges in sufficient detail to allow the defendant to maintain that future charges which relate to the same conduct are precluded by a previous conviction or acquittal.  *See Hamling v. United States*, 418 U.S. 87, 117 (1974) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.") (citation and internal quotation marks omitted); *Russell v. United States*, 369 U.S. 749, 763-64 (1962).

The Court finds and rules that the Superseding Indictment against Defendant undoubtedly satisfies this requirement.

The intent requirement in the FDPA "does not concern the guilt or innocence of the defendant - it establishes no new elements of the crime of murder that must be found by the jury [and] 'does not affect the state's definition of any substantive offense, even a capital offense.' " *Cabana v. Bullock*, 474 U.S. 376, 385 & n. 3 (1986), *abrogated on other grounds*,

*Pope v. Illinois,* 481 U.S. 497 (1987) (*quoting Reddix v. Thigpen*, 728 F.2d 705, 709 (5th Cir.),

*cert. denied*, 469 U.S. 990 (1984)).  Rather, the intent elements are aggravating factors to be

considered at sentencing.  An indictment does not require the enumeration of "sentencing

factor[s] that come[ ] into play only after a defendant has been found guilty of one of those

crimes beyond a reasonable doubt." *McMillan v. Pennsylvania*, 477 U.S. 79, 86 (1986); *see*

*also Walton v. Arizona*, 497 U.S. 639, 648 (1990); *Buckley v. Butler*, 825 F.2d 895, 902-03 (5th

Cir. 1987), *cert. denied,* 486 U.S. 1009 (1988).

      The Court of Appeals for the Eighth Circuit in *United States v. Allen* explained that

the Fifth Amendment requires that the grand jury find and charge in the indictment at least one

statutory aggravating factor and the *mens rea* requirement. *United States v. Allen*, 406 F.3d 940,

949 (8th Cir. 2005)(en banc), *cert. denied,*  --- U.S. ---, 127 S. Ct. 826 (2006) (citations

omitted).  "The indictment must include at least one statutory aggravating factor to satisfy the

Fifth Amendment because that is what is required to elevate the available statutory maximum

sentence from life imprisonment to death." *Id.*   In this case, the Superseding Indictment

reflects that the grand jury found the *mens rea* requirement and two statutory aggravating

factors.  The Court, therefore, finds that there is no Fifth or Sixth Amendment violations and no

violation of the FDPA.


B.      <u>Specific Challenge to the Statutory Aggravating Factor In This Case:</u>

          <u>         </u>*Is the Statutory Aggravating Factor of "Substantial Planing and Premeditation"*
          *Overbroad*

      Defendant contends that the Notice of Intent improperly alleges the statutory

aggravating factor of "substantial planning and premeditation. " Defendant argues that this

9

factor does not adequately narrow the category of defendants eligible to receive the death

penalty because " 'planning and premeditation' are part of every intentional murder; they do not

genuinely narrow the class of murders subject to the death penalty."  Def's Memo. at 18.

       An aggravating factor, to comport with the Eighth Amendment, must " 'genuinely

narrow the class of persons eligible for the death penalty and must reasonably justify the

imposition of a more severe sentence on the defendant compared to others found guilty of

murder.' " *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988) (*quoting Zant*, 462 U.S. at 867).

This Court finds that the "substantial planning and premeditation" factor adequately "assist[s]

the jury in distinguishing 'those who deserve capital punishment from those who do not. . . .' "

*McVeig*h, 944 F. Supp. at 1488 (*quoting Arave*,  507 U.S. at 474).  As stated by the district

court in *United States. v. Minerd*, 176 F. Supp. 2d 424, 439 (W.D. Pa. 2001), "[n]ot every

murder involves substantial planning and premeditation."  In the case *sub judice,* if Defendant

is found guilty on the death eligible count, the jury will then determine whether Defendant's

actions involved substantial planning and premeditation.

       Defendant also argues that the factor should be stricken for vagueness.  The Court

concludes that "substantial" is not unconstitutionally vague in the FDPA context.  To find this

aggravating factor, the jury must find beyond a reasonable doubt that "[t]he defendant

committed the offense after substantial planning and premeditation to cause the death of a

person. . . ." 18 U.S.C. § 3592(c)(9).  "Substantial" has a "common-sense core of meaning . . .

that juries should be capable of understanding." *Tuilaepa,* 512 U.S. at 975  (citation and

quotation marks omitted).  Moreover, this aggravating factor "generally narrow[s] the class of

persons eligible for the death penalty and . . . reasonably justif[ies] the imposition of a more

severe sentence on the defendant compared to others found guilty of murder." *Lowenfield*, 484

U.S. at 244 (citation and quotation marks omitted).  Accordingly, the Court rejects Defendant's

contention that the substantial planning/premeditation aggravating factor should be stricken for

vagueness.


C.        Specific Challenges to the Non-Statutory Aggravating Factors

          1.        *Does The Failure to Charge the Non-Statutory Aggravators in the Indictment*
                    *Violate the Fifth Amendment Indictment Clause and Due Process*

          Defendant claims that the Superseding Indictment is defective because it failed to

include the non-statutory aggravating factors.  The FDPA permits the Government to seek the

death penalty by filing a written notice at "a reasonable time before trial . . . setting forth the

aggravating factor or factors the government . . .  proposes to prove as justifying a sentence of

death." 18 U.S.C. § 3593(a)(1) & (2).  In order for a defendant to be eligible for the death

penalty, the jury must find the existence of at least one enumerated mental state and at least one

statutory aggravating factor.  18 U.S.C. §§ 3591(a)(2) & 3592(c).  If the jury determines a

defendant is "death eligible," it must then review any non-statutory aggravating factors as well

as any mitigating factors and "consider whether all the aggravating factor or factors found to

exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence

of death." 18 U.S.C. § 3593(e).  The FDPA does not require the Government to charge

statutory or non-statutory aggravating factors in the indictment nor does it require the

Government to present statutory and non-statutory aggravating factors to a grand jury.

          The Grand Jury Clause of the Fifth Amendment to the United States Constitution

states that "[n]o person shall be held to answer for a capital ... crime, unless on presentment or

11

indictment of a Grand Jury . . . ." U.S. Const. Amend. V.  Defendant contends that pursuant to

the United States Supreme Court decisions in *Apprendi v. New Jersey,* 530 U.S. 466 (2000);

*Ring v. Arizona,* 536 U.S. 584 (2002); and *Blakely v. Washington*, 542 U.S. 296 (2004), all

aggravating factors, including non-statutory aggravating factors, must be presented to a grand

jury and charged in the indictment.  Several circuit courts have found the holdings in *Ring*,

*Apprendi,* and *Jones v. United States*, 526 U.S. 227 (1999), applicable to the Fifth Amendment

Grand Jury Clause and concluded that the Fifth Amendment requires that at least one <u>statutory</u>

aggravating factor that allows for imposition of the death penalty must be presented to a grand

jury and charged in the indictment.  *See Allen*, 406 F.3d at 943 ('We therefore conclude that the

Fifth Amendment requires at least one statutory aggravating factor and the *mens rea*

requirement to be found by the grand jury and charged in the indictment"); *see also Robinson,*

367 F.3d at 278 (5th Cir.), *cert. denied,* 543 U.S. 1005 (2004); *United States v. Higgs,* 353 F.3d

281, 298 (4th Cir. 2003); *United States v. Quinones*, 313 F.3d 49, 53 n. 1 (2d Cir. 2002), *cert.*

*denied*, 540 U.S. 1051 (2003).[3]  The Court agrees with the reasoning of these courts and finds

that at least one statutory aggravating factor and the *mens rea* requirement must be found by the

---

[3]     The Superseding Indictment in this case charges two statutory aggravating factors, *to wit*:

"[The defendant, JELANI SOLOMON] . . .  procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value (Title 18, United States code, Section 3591 (c)(7) (sic); . . . committed the offense after substantial planning and premeditation to cause the death of a person (Title 18, United States code, Section 3591(c)(9) (sic).

*Superseding Indictment, Notice of Special Findings, ¶¶ (b)(6) and (7).*

12

grand jury and charged in the indictment.  (As noted in footnote 3, *supra*, the Superseding Indictment in this case charges <u>two</u> aggravating factors, as well as the *mens rea* requirement).

However, the Court finds and rules that the Government has no Fifth Amendment obligation to charge <u>non-statutory</u> aggravating factors in the indictment and present them to the grand jury.  According to Defendant, under *Ring*, *Apprendi*, and *Jones*, non-statutory aggravating factors must be charged in the indictment and presented to the grand jury because they expose a defendant to a greater punishment than that authorized by the jury's guilty verdict alone.  The Court disagrees and finds that non-statutory aggravating factors do not increase the level of punishment to which a defendant may be subjected.  As described above, the jury may only consider non-statutory aggravating factors after making an initial determination that a defendant is eligible to receive the death penalty.  *See U.S. v. Brown,* 441 F.3d 1330 (11th Cir. 2006), *cert. denied*, -- U.S. ---, 127 S. Ct. 1149 (2007); *United States v. Purkey,* 428 F.3d 738, 749-50 (8th Cir. 2005), *cert. denied*,-- U.S. ---. 127 S. Ct. 433 (2006)*; United States v. Bourgeois,* 423 F.3d 501, 507 (5th Cir. 2005), *cert. denied,*  -- U.S. --, 126 S. Ct. 2020 ( 2006); *Higgs*, 353 F.3d at 298.  Because the Court has found that the Fifth Amendment does not require the Government to charge non-statutory aggravating factors in the indictment and present them to the grand jury, the fact that the Superseding Indictment does not include non-statutory aggravating factors does not render the Superseding Indictment defective.

    2.    *Does the Use of Non-Statutory Aggravating Factors Violate the Separation of Powers Doctrine*

Defendant next argues that the "use of non-statutory aggravating factors violates the principle of Separation of Powers which prohibits Congress from delegating purely legislative

policy decisions." Memo. at 48. At the outset the Court notes that this argument has been rejected by every court to which it has been made, including the Court of Appeals for the Fifth, Eighth, and Tenth circuits.

The nondelegation doctrine arises from the constitutional principle of separation of powers, specifically Article 1, § 1, which provides that "all legislative Powers herein granted shall be vested in a Congress of the United States." *See Touby v. United States,* 500 U.S. 160, 165 (1991); *Mistretta v. United States,* 488 U.S. 361, 371 (1989). Under the nondelegation doctrine, Congress may not constitutionally delegate its legislative power to another branch of government. *See Mistretta*, 488 U.S. at 372. Congress may seek aid, however, from coordinate branches of government. Delegation of congressional power, in the sentencing realm, is permissible "[s]o long as Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *United States v. Jones*, 132 F.3d 232, 239 (5th Cir. 1998) (*citing Mistretta*, 488 U.S. at 390 (internal citations omitted)). The *Jones* court explained that the "authority to define non-statutory aggravating factors falls squarely within the Executive's broad prosecutorial discretion, much like the power to decide whether to prosecute an individual for a particular crime." In so holding, the court noted that the legislature, acting alone, could not have adequately anticipated the various circumstances of each crime. *Id.*

The *Jones* court also emphasized that this delegation of power is constitutional because it is circumscribed by four factors that, when taken together, form an "intelligible principle" that adequately limits prosecutorial power. First, the prosecution must give prior notice to the defendant with regard to all aggravating factors. *Id.* at 240; *see* 18 U.S.C. §

3593(a).  Second, "the death penalty jurisprudence devised by the Supreme Court guides the prosecution in formulating non-statutory aggravating factors." *Id*.  Third, the district court retains its function as "gatekeeper" to exclude information it deems irrelevant or too prejudicial. *Id*.; *see* 18 U.S.C. § 3593(c).  Fourth, the non-statutory aggravating factors are not even considered by the jury unless the jury has already found the requisite *mens rea* and at least one statutory aggravating factor beyond a reasonable doubt.  *Id*.; *see* 18 U.S.C. § 3593(d).

Thus, a prosecutor's power to promulgate non-statutory aggravating factors is not without an intelligible principle; rather, the prosecution must act within congressionally mandated and court-imposed constraints.  *See United States v. Paul*, 217 F.3d 989, 1003 (8th Cir. 2000) (finding no violation of the separation of powers because "the prosecution was adequately limited in its power" by the factors listed in *Jones*), *cert. denied*, 534 U.S. 829 (2001); *United States v. McCullah*, 76 F.3d 1087, 1106-07 (10th Cir. 1996) (finding the notice requirement, the court's power to exclude certain information, and the requirement that the jury first find mens rea and a statutory aggravating factor adequately guided the prosecution's choice of non-statutory aggravators), *cert. denied,* 520 U.S. 1213 (1997); see also *United States v. Fell,* 360 F.3d 135 (2d Cir.) (citing *Jones* with approval, but without discussion), *cert. denied,* 543 U.S. 946 (2004);  *United States v. Minerd*, 176 F. Supp. 2d 424 (W.D. Pa. 2001).

The Court agrees with the reasoning set forth in the above cases and holds that because the prosecution's power is limited by an intelligible principle, the FDPA does not violate the nondelegation doctrine by allowing the prosecution to choose non-statutory factors.

15

In addition, because such power is circumscribed by the factors listed above, the weighing of non-statutory aggravating factors is not unconstitutionally vague.[4]

      3.      *Does the Use of Non-Statutory Aggravating Factors Violate the Ex Post Facto Clause*

Defendant contends that the use of non-statutory aggravating factors violates the Ex Post Facto Clause by permitting the prosecution to manufacture aggravating factors after a crime was committed and apply them retroactively. The Ex Post Facto Clause, U.S. Const., Article I, section 9, cl. 3, protects against laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43 (1990). A number of courts which have addressed this issue have concluded that the enactment of the FDPA "was a change in sentencing procedure, not a change in the definition of a crime or an increase in the punishment." *McVeigh,* 944 F. Supp. at 1486. *See also United States v. Llera Plaza*, 179 F. Supp. 2d at 455-56 (non-statutory aggravating factors neither alter the definition nor increase the punishment for a crime or criminal act); *Minerd*, 176 F. Supp. 2d at 433-34 (non-statutory aggravating factors neither increase possible punishment nor alter elements because the "jury need not even address non-statutory aggravating factors in order to

---

[4]      Of course, a specific aggravating factor may be struck by a court pursuant to the court's gatekeeping function. For instance, "an aggravating factor that is necessarily and wholly subsumed by a different aggravator within the same death penalty notice is invalid per se and should not be submitted to the penalty jury for sentencing consideration." *United States v. Bin Laden*, 126 F. Supp. 2d 256, 259 (S.D.N.Y. 2000).

recommend the death penalty"); *United States v. Nguyen*, 928 F. Supp. 1535, 1538 (D. Kan. 1996) ("The fact that the government alleged non-statutory aggravating factors does not change the definition of the crimes, nor the quantum of punishment available.")

The Court joins those courts which have reached the conclusion that the use of non-statutory aggravating factors neither alters the definition of the death eligible crimes nor increases the punishment for those crimes because consideration of any non-statutory aggravators does not occur until the defendant has already been found eligible to receive the death penalty. *See United Sates v. Higgs*, 353 F.3d 281, 322 (4th Cir. 2003) ( "non-statutory aggravating factors and mitigating factors are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible. They do not increase the possible punishment or alter the elements of the offense.), *cert. denied*, 543 U.S. 1004 (2004).

> 4.   *Does the FDPA Unconstitutionally Permit Juries to Consider Non-Statutory Aggravating Factors Without Providing for Mandatory Porportionality Review*

Defendant argues that the FDPA is constitutionally flawed because it permits juries to consider non-statutory aggravating factors without providing for mandatory proportionality review.

As a threshold matter, the Court notes that Defendant has yet to be tried, let alone convicted. His challenge to the FDPA on appellate issues is therefore not ripe. *United States v. Carlos Ivan Llera Plaza*, 179 F. Supp. 2d 444, 461 (E.D. Pa. 2001). Furthermore, if Defendant is convicted and the jury renders a verdict of death, Defendant's challenge to the procedure by

which appellate review is to be pursued should be addressed to the court of appeals, not to this Court. *Id.*

Assuming, *arguendo*, that Defendant's argument is ripe, this Court finds and rules that the FDPA provides for meaningful appellate review. The statute directs the appeals court to review the entire record of the case, including the evidence submitted at trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned, and determine whether the: (1) sentence of death was imposed "under the influence of passion, prejudice, or any other arbitrary factor;" (2) "admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor;" and (3) "proceedings involved any legal error requiring reversal of the sentence." 18 U.S.C. § 3595(c).

Moreover, while the Constitution requires meaningful appellate review in death penalty cases, there is no requirement that review be automatic. *United States v. Davis*, 904 F. Supp. 554, 558 (E.D. La. 1995). The burden of filing an appeal is not onerous. Having appointed Defendant's counsel, this Court is confident that they are more than capable of timely filing a proper notice of appeal should their client be convicted of a capital offense and sentenced to death. *Id*.

Defendant also argues that the FDPA prevents the appellate court from considering proportionality. Proportionality review in capital cases requires an appellate court to determine whether the death sentence is "unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime." *Pulley v. Harris,* 465 U.S. 37, 43 (1984). While the Supreme Court extols the virtues of proportionality review, it has held

18

that the constitution does not require such a form of review. *Id*. at 44. However, nothing in the FDPA prevents an appellate court from undertaking proportionality review if the court so chooses. *McVeigh*, 944 F. Supp. at 1486. As such, the Court finds and rules that the appellate proceedings provide adequate protection against arbitrary and capricious sentencing, and the FDPA does not run afoul of the Constitution by failing to require proportionality review.

5.      *Are the Non-Statutory Aggravating Factors Facially Unconstitutional*

Title 18, United States Code, section 3592(c), authorizes the jury to consider non-statutory aggravating factors as long as the Government provides notice of the factors it intends to present. The Notice of Intent in the case *sub judice* clearly comports with that requirement by listing four non-statutory aggravating factors that the government intends to pursue pursuant to 18 U.S.C. §§ 3593(a)(2) and 3592(c).

The United States Supreme Court has also held that the Constitution allows consideration of non-statutory aggravating factors "relevant to the character of the defendant or the circumstances of the crime," *Barclay v. Florida,* 463 U.S. 939, 967 (1983), after the sentencer first finds the gateway mental state and at least one statutory aggravating factor that narrows the class of defendants eligible for the death penalty. *Zant*, 462 U.S. at 878. Thus, Defendant's argument that the non-statutory factors are overbroad to the extent they fail to narrow the class of death-eligible defendants is not well taken by this Court because it confuses the purposes of statutory and non-statutory aggravating factors. Only the statutory factors are required to narrow the class of murderers who might properly face the death penalty ("eligibility"); the non-statutory factors serve as additional information for the sentencer

("selection").  Once the jury has narrowed the class of defendants by finding guilt, the gateway *mes rea*, and at least one statutory aggravating factor, the focus appropriately shifts to providing the sentencer with all possible relevant information to enable it to tailor its verdict to the individual before it.

The Court agrees with the Government in that, "as long as that information is relevant to the character of the defendant or the circumstances of the crime," consideration of non-statutory aggravating factors (like the consideration of non-statutory mitigating circumstances) serves the purpose of ensuring an individualized sentence that minimizes the risk of arbitrary and capricious action.  See *Barclay,* 463 U.S. at 967 (Stevens, J., concurring); *see also Simmons*, 512 U.S. at 163-64;  *Payne v. Tennessee*, 501 U.S. 808, 820-827 (1991); *Zant*, 462 U.S. at 878-79.

In addition the Court is cognizant that the FDPA requires that any information proffered at the penalty phase "may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury," 18 U.S.C. § 3593(c), and makes clear that any such factors must be "sufficiently relevant to the consideration of who should live and who should die." *United States v. Davis*, 912 F. Supp. 938, 943 (E.D. La. 1996).  Furthermore, the "heightened reliability doctrine" applicable to capital sentencing also governs "the admissibility of non-statutory aggravating factors." *Bradley*, 880 F. Supp. at 285.

 Accordingly, the Court rejects Defendant's contention that the non-statutory aggravating factors are facially unconstitutional and should be stricken.

6.      _Is The "Victim Impact" Non-Statutory Aggravating Factor Vague and Overly Broad_

The Notice of Intent alleges that, as a non-statutory aggravating factor, "victim impact evidence" will be presented.  Defendant posits that the factor is overly broad and fails to "sufficiently narrow the class of murderers for whom the death penalty is available" as "every killing causes harm."  Def's Memo. at 62.  However, the FDPA, at § 3593(a)(2), specifically permits the introduction of victim impact evidence in federal criminal prosecutions.

The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.

Moreover, the narrowing function has been performed by the statutory aggravating factors in the FDPA, and the victim impact factor serves to characterize Defendant and individualize his sentence.  _United States v. Regan_, 228 F. Supp. 2d 742, 753 (E.D. Va. 2002).  In addition, the United States Supreme Court has held that there is no _per se_ constitutional bar on victim impact evidence in capital sentencing.  _See Payne v. Tennessee_, 501 U.S. at 831 ("We hold merely that if a State decides to permit consideration of this evidence, the Eighth Amendment erects no per se bar."); _Jones v. United States_, 527 U.S. 373, 401-02 (1999) ("such evidence is surely relevant to the selection phase decision, given that the sentencer should consider all of the circumstances of the crime in deciding whether to impose the death penalty.").

In the case *sub judice*, the Notice of Intent indicates that the Government will present evidence concerning the "devastating effect[]" that the murder of Frank Helisek, Jr. had "on the lives of [his] children and family." Notice of Intent, ¶ III (d). Because this evidence will help to inform the jury about the individual circumstances of the case and because the United States Supreme Court has determined that this type of evidence is constitutionally admissible, Defendant's request to strike the non-statutory aggravating factor of victim impact evidence will be denied.

However, the Court agrees with the Defendant that the government should address further the nature of the information it will provide as victim impact information. Accordingly, in the exercise of its inherent authority, the Court will order the Government to outline the type and scope of the "devastating effect" suffered by each victim, his or her family members, and other individuals as relevant, and the "personal characteristics" of each victim that it intends to prove. Notice at III (d). The Court envisions a document that is akin to an informative outline, but not a revelation of evidentiary detail or the Government's theory of its case. *Bin Laden,* 126 F. Supp. 2d at 304. This can be accomplished with a written pleading or in open court before trial begins, as counsel for the Government prefers. The Court, however, will carefully review the victim impact evidence, as set forth above, to ensure the exclusion of evidence that is more prejudicial than probative

7.    *Should the Non-Statutory Aggravating Factor "Future Dangerousness" Be Dismissed*

_____Defendant argues that the term "future dangerousness" does not "account for the fact that, if convicted of any of the capital counts in the indictment, but spared the death penalty,

22

Mr. Solomon will spend the rest of his life in a maximum security federal penitentiary and that this is the context in which the degree of danger he will present to others must be judged." Def's Memo. at 75.[5]

The United States Supreme Court "has approved the jury's consideration of future dangerousness during the penalty phase of a capital trial, recognizing that a defendant's future dangerousness bears on all sentencing determinations made in our criminal justice system." *Simmons v. South Carolina*, 512 U.S. 154, 162 (1994) (*citing Jurek v. Texas*, 428 U.S. 262, 275 (1976)) (noting that "any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose"); *California v. Ramos*, 463 U.S. 992, 1003, n. 17 (1983) (explaining that it is proper for a sentencing jury in a capital case to consider "the defendant's potential for reform and whether his probable future behavior counsels against the desirability of his release into society").

This Court agrees with Defendant that he must be allowed to inform the sentencer that he would not be eligible for parole if the prosecution argues future dangerousness. *See Beard v. Banks*, 542 U.S. 406, 418 (2004). As the Supreme Court stated in *Simmons*:

> In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant. Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant

---

[5]     As the government aptly points out, there is only one death-eligible count in the Superseding Indictment (Count Six), for which a conviction that involves murder is "punished by death or by imprisonment <u>for any term of years</u> or for life." 18 U.S.C. § 924(j)(l) (emphasis added). Therefore, it is possible that, even if convicted on Count Six, Defendant may be sentenced to a term of years which will not extend to the end of his natural life. *See* 18 U.S.C. § 3593(e), which provides that "the jury by unanimous vote, . . . . shall recommend whether the defendant should be sentenced to death, to life imprisonment without the possibility of release or some other lesser sentence."

> who is eligible for parole as a greater threat to society than a defendant who is not.  Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole.

*Simmons,*  512 U.S. at 162-64.  If Defendant is convicted, life imprisonment without the possibility of parole will rebut the Government's argument of future dangerousness.  If necessary, this Court will instruct the jury accordingly.  Defendant's motion to strike this aggravating factor, therefore, will be denied.

8.   *Is the Non-Statutory Aggravating Factor "Innocent Victim" Subsumed by the Victim Impact and Obstruction of Justice Aggravating  Factors*

The FDPA is a weighing statute.  Under a weighing statute aggravating factors, whether statutory or non-statutory, may not be alleged in duplicative fashion.  *See United States v. McCullah*, 76 F.3d 1087, 1111-12 (10th Cir. 1996), *cert. denied*, 520 U.S. 1213 (1997).  This is to avoid the effect of having the same conduct or circumstance found repeatedly and weighed repeatedly.  Duplicative factors have the undeniable tendency to undermine the integrity of the weighing process because the same factor may be weighed more than once by the jury.  *Id.*  In essence duplicative factors stack the deck in favor of death.

The Notice of Intent in this case enumerates four non-statutory aggravating factors the government will seek to prove should this case reach the penalty phase.  In addition to the future dangerousness factor, the Notice of Intent contains the following non-statutory aggravating factors:

(b) **Knowingly Targeting an Innocent Victim.**  Jelani Solomon executed a totally innocent and unsuspecting, and therefore utterly defenseless, victim by causing Claron Hanner to shoot him after luring the victim to the front door of his home, for no reason other than the victim's

24

son had cooperated with law enforcement authorities in an investigation / prosecution of Solomon.

(c) **Motive to Obstruct Justice / To Intimidate or Retaliate Against A Witness**.  Jelani Solomon paid Claron Hanner to murder Frank Helisek, Jr., so that Solomon could dissuade Sean Helisek from testifying against him, to retaliate for Helisek's cooperation with law enforcement authorities, and to enhance Solomon's reputation as a drug dealer and ensure that no one ever again informed on him.

(d) **Victim Impact**.  The murder of Frank Helisek, Jr. had devastating effects on the lives of his children and family.  As reflected by the victim's personal characteristics as an individual human being and the impact of the offense on the victim and the victim's family, Jelani Solomon caused loss, injury, and harm to the victim and the victim's family (see Payne v. Tennessee, 501 U.S. 808, 825-27 (1991)).

Defendant argues that the "innocent victim" factor should be stricken as it is subsumed by the "Motive to Obstruct Justice" and the "Victim Impact Evidence" factors. Specifically, Defendant contends that "[t]o the extent that the 'innocent victim' factor seeks to highlight that the victim was a totally innocent and unsuspecting victim and that these facts somehow play into the type of person he was, the factor impermissibly credits two aggravating factors for the same facts.  To prevent double counting, the offending aggravating factors must be struck."  Def's Memo. at 89.

The United States Supreme Court has assumed, without deciding, that where one factor "necessarily subsumes" another, "double counting" may result and unconstitutionally skew the weighing process. *Jones v. United States*, 527 U.S. 373, 398 n. 13 (1999).   However, the Supreme Court instructed that a factor "necessarily subsumes" another factor only where the factors in question employ essentially identical facts in support of essentially identical areas of aggravation.  *Id.* at 399.

25

The two factors must entirely replicate each other and not just overlap in some response in order to be impermissibly duplicative. Even if one factor is relevant to another and involves either a common method of proof or some of the same evidentiary support, the factors are not impermissibly duplicative. *United States v. Kacynski,* 1997 WL 716487 at *27 (E.D. Ca. 1997). Moreover, "the same facts can support different inferences that form different aggravators." *United States v. Purkey*, 428 F.3d 738, 762 (8th Cir. 2005), *cert. denied,* -- U.S. --, 127 S. Ct. 433 (2006); *Medlock v. Ward*, 200 F.3d 1314, 1319 (10th Cir. 2000) (per curiam), *cert. denied*, 531 U.S. 882 (2000).

After a deliberative review of the Notice of Intent filed in this case, the Court finds and rules that the non-statutory aggravating factors (b), (c), and (d) all refer to different facts and address different areas of aggravation, i.e, the execution of an innocent victim, the purpose of obstructing justice, which resulted in devastating effects on the victim's family. Therefore, these factors are not duplicative or subsumed within each other.

9.     *Does the Notice of Intent Contain a "Catch-All" Aggravating Factor*

Defendant argues that the following language contained in the last paragraph of the Notice of Intent is a non-statutory "catch-all" aggravating factor which is not consistent with the FDPA:

> The government further gives notice that in support of imposition of the death penalty, it intends to rely upon all of the evidence admitted by the Court at the guilt phase of the trial and the offenses of conviction as described in the indictment as they relate to <u>the background and character of the defendant, Jelani Solomon, his moral culpability, and the nature and circumstances of the offenses charged in the indictment</u>.

Notice of Intent, at 4 (emphasis added).

26

Defendant makes the strained argument that the underlined phrase above constitutes a "catch-all aggravating factor" which is not consistent with the FDPA. Def's Memo. at 89. Defendant's argument will be summarily denied. Upon review, the Court finds that the above passage is not a "catch-all aggravating factor." Rather, the government has simply provided notice to Defendant that the government will rely on the merits phase evidence and outcome in presenting its penalty phase position.

D.     Motion to Strike Notice of Intent, Request for a Bill of Particulars, and/or Pretrial Evidentiary Hearing

Lastly, Defendant argues that the Notice of Intent is "wholly insufficient either to apprise defendant Mr. Solomon on the nature of the aggravating factors upon which the government will rely to sentence him to death or to enable him to prepare his defense to the aggravating factors alleged" and therefore the Notice should be stricken. Def's Memo. at 100.

The Court of Appeals for the Fourth Circuit has observed:

> The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor, . . ., not notice of the specific evidence that will be used to support it. See 18 U.S.C.A. § 3593(a) (requiring only that the government's notice 'set [] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death"); *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) (observing that notice given to a defendant of the applicable aggravating factors in a death penalty case is not the same as notice of the specific evidence that the government intends to present at a sentencing hearing), *cert. denied*, 529 U.S. 1022 (2000); *cf. Gray v. Netherland*, 518 U.S. 152, 167-68 (1996) (noting that there is no constitutional right to advance notice of the government's evidence in aggravation at a capital sentencing hearing).

*United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003) (emphasis added), *cert. denied*, 543 U.S. 1004 (2004). The United States Supreme Court has also observed that "it has always been

the Court's view that the notice component of due process refers to the Court's view that the

notice component of due process refers to the charge rather than the evidentiary support for the

charge." *United States v. Agurs*, 427 U.S. 97 n. 20 (1976). *See also Minerd,* 176 F. Supp. 2d at

448 (noting authority for requiring more specificity regarding the notice, but observing the

notice and indictment together "sufficiently advise[d] the defendant of the charges he must be

prepared to defend").

The Court finds that the Superseding Indictment and the Notice of Intent in this

matter fully advise the Defendant on the nature of the aggravating factors upon which the

government will rely to sentence him.  Accordingly, the Notice of Intent will not be stricken.

Alternatively, Defendant argues that in the event that the Court does not strike the

Notice of Intent, the Court should "grant a bill of particulars or other appropriate notice" which

requires the government to "provide a written notice of the following:  (1) with respect to each

person or act or event referred to in the death penalty notice, identifying each person and the

date, place and general nature of each act or event; and (2) specifying the general nature of the

evidence it intends to rely on to support a finding that defendant committed the offense 'after

substantial planning and premeditation.' "  Def's Memo. at 16-17.

Rule 7(f) of the Federal Rules of Criminal Procedure provides as follows:

The court may direct the filing of a bill of particulars.  A motion for a bill
of particulars may be made before arraignment or within ten days after
arraignment or at such later time as the court may permit.  A bill of
particulars may be amended at any time subject to such conditions as
justice requires.

Under this rule, "[a] defendant possesses no right to a bill of particulars and the

decision on the motion lies in the sound discretion of the court."  *United States v. Burgin,* 621

F.2d 1352, 1358 (5th Cir.), *cert. denied*, 449 U.S. 1015 (1980).  " 'The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.' "  *United States v. Addonizio,* 451 F.2d 49, 63-64 (3d Cir.), *cert. denied,* 405 U.S. 936 (1972).  A motion for a bill of particulars should be granted if the government's failure to allege factual or legal information in the indictment "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial."  *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989).

A bill of particulars is not a discovery device and "is not intended to provide the defendant with the fruits of the government's investigation."  *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).

After careful consideration of Defendant's request, the Court is not convinced that a motion for a bill of particulars can be utilized to obtain a more detailed statement of the aggravating factors alleged by the government in its Notice of Intent.  *See Minerd,* 176 F. Supp. 2d at 448-49 (no legal basis for granting a motion for a bill of particulars requesting details of aggravating factors).  A bill of particulars is generally requested because the indictment does not adequately apprise the defendant of the charges.  *See., e.g., Addonizio, supra.*  The government's Notice of Intent complies with § 3593 in that it specifies the aggravating factors the government intends to prove if Defendant is convicted of capital murder.  The Superseding Indictment and the Notice of Intent filed in this case sufficiently advise Defendant of the charges against which he must be prepared to defend at trial.  Accordingly, Defendant's request for a bill of particulars will be denied.

The Court also will deny Defendant's request for a pre-trial evidentiary hearing to rule on the sufficiency of the evidence to support all of the non-statutory aggravating factors. While the Court recognizes that it has the authority to conduct such a hearing, *see United States v. Llera Plaza*, 179 F. Supp. 2d 464, 469-70 (E.D. Pa. 2001), the Court finds that such a hearing is "unnecessary." *United States v. Frank*, 8 F. Supp. 2d 253, 278-79 (S.D.N.Y. 1998).

Under the FDPA, the Court has the gatekeeping role to exclude any evidence from the consideration of the jury that is more unfairly prejudicial than probative. *Id.* Additionally, the penalty phase is an adversarial proceeding, wherein the defendant is "permitted to rebut any information received at the hearing," and may "present argument as to the adequacy of the information to establish the existence of any aggravating factor. *Id.* at 278 (quoting 18 U.S.C. § 3593(c)) .

Furthermore, with respect to the case at bar, the Court recognizes that, if a penalty phase does take place, the period of time between the guilt phase and the penalty phase may be brief.  However, it appears that much of the evidence the government intends to introduce during the penalty phase will be introduced during the merits phase as well.  The Court will be in a better position to evaluate the relevance and probative value of this evidence after the merits phase.  Defendant may renew his evidentiary objections at the conclusion of the merits phase, and the Court will at that time reconsider the need for an evidentiary hearing.  At this time, however, Defendant's request for a pretrial hearing will be denied.

30

**Conclusion**

For all of the above reasons, the Motion to Strike Notice of Intent to Seek Death Penalty Or, In The alternative, Motion to Dismiss Specific Aggravating Factors filed by Defendant Jelani Solomon will be denied.  An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 02: 05cr385 |
| | ) | |
| JELANI SOLOMON | ) | |

### ORDER OF COURT

AND NOW, this 26th day of June, 2007, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that the Motion to Strike Notice of Intent to Seek Death Penalty Or, In The Alternative, Motion to Dismiss Specific Aggravating Factors filed by Defendant Solomon is **DENIED.**

It is **FURTHER ORDERED** that the Government shall elaborate on the nature of its victim impact information consistent with Paragraph C (6) of the Memorandum Opinion

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:    Tina O. Miller , Esquire
       Assistant U.S. Attorney
       Email: tina.o.miller@usdoj.gov

       Martin A. Dietz, Esquire
       Email: MDietzEsq@aol.com

       Robert E. Stewart , Esquire
       Email: restjs@msn.com

       Anthony L. Ricco, Esquire
       Email: tonyricco@aol.com